UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,              HON. MARK A. GOLDSMITH
v.                                    Case No. 12-CR-20287

ALEXANDRA NORWOOD, et al.

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT ALEXANDRA NORWOOD'S MOTION TO DISMISS COUNTS ONE AND TWO (DKT. 215)[1]

### I. INTRODUCTION

Defendant Alexandra Norwood filed the instant motion to dismiss challenging the sufficiency of the governing indictment's Racketeering Conspiracy and Murder in Aid of Racketeering charges against him. In particular, Defendant argues that the indictment fails to allege the necessary elements of "enterprise" — as required to support a RICO claim — because there are insufficient allegations concerning the structure of the enterprise, i.e., the roles and associations of the members and the decision-making framework of the group. Def.'s Br. at 9-10 (Dkt. 215). Defendant also claims the indictment fails to allege a pattern of racketeering activity because there are purportedly no substantive facts regarding how the listed overt acts are connected to the affairs and operations of the criminal enterprise. Id. at 10-11.

The Government filed its response (Dkt. 289), Defendant filed a reply (Dkt. 299), and the Government filed a response to Defendant's reply (Dkt. 300). The Court heard oral argument on

---

[1] The motion is joined by Defendants Declyde Brewton (Dkt. 216), Jatimothy Walker (Dkt. 218), Jamil Cureton (Dkt. 231), Jonathan Walker (Dkt. 245), Carvell Gordon (Dkt. 251), Johnathan Oldom (Dkt. 270), Willie Chambers (Dkt. 272), Leon Gills (Dkt. 274), and Sean Cunningham (Dkt. 313).

1

October 16, 2013, and took the matter under advisement. 10/18/13 Order at 1 (Dkt. 319). For the reasons discussed below, the Court now denies Defendant's motion to dismiss.

## II. BACKGROUND

On April 4, 2013, a federal grand jury issued an Amended First Superseding Indictment against the Defendants for their purported participation in, and conduct arising from, the Howard Boys gang. Am. First Superseding Indictment (Dkt. 191). Although each individual Defendant was charged with different counts relative to his conduct arising from the purported gang, the crux of the indictment is Count One, which charges all of the Defendants with "Racketeering Conspiracy," pursuant to 18 U.S.C. § 1962(d).

Count One of the indictment alleges that the Defendants were members of the Howard Boys, a "criminal organization" that "engaged in murders, attempted murders, drug trafficking, weapons trafficking, and other crimes." Id. ¶ 1.[2] The indictment claims that the Howard Boys constituted an "enterprise" that was engaged in interstate commerce and that "constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise." Id. ¶ 2. According to the indictment, the Howard Boys identified themselves and their territory using graffiti, tattoos, hand signs, handshakes, and social networking sites. Id. ¶ 12.

The indictment claims that the Howard Boys are based at the Howard Estates public housing complex, which also helps define the group's territory. Id. ¶ 9. The indictment alleges that the Howard Boys "maintained and controlled this territory, such that, within the territory, they and their associates conducted drug and weapons sales with impunity." Id. According to the indictment, the Howard Boys did so through "intimidation, fear and violence," such as

---

[2] All paragraph citations are to Count One of the Amended First Superseding Indictment unless otherwise noted.

2

physically assaulting persons not associated with the Howard Boys who attempted to enter the area to sell drugs. Id. ¶ 10. This was done to ensure the enterprise's territory and corresponding income stream was protected. Id. ¶ 11. The protected territory was referred to as "Murda Villa," "Howard Block," or "The Bricks." Id. ¶ 9.

The indictment also lists the alleged purposes of the Howard Boys:

- promoting, protecting, and enhancing the authority, reputation, and standing of the group through the use of intimidation, threats, possession of weapons, assaults, attempted murders, and murders;

- maintaining control over and protecting the enterprise's territory through these same means to further the members' and associates' distribution of controlled substances;

- enriching its members through the commission of crimes involving the distribution of controlled substances and illegal sale of weapons;

- protecting the group and its members from detection, apprehension, and prosecution by law enforcement;

- enforcing its authority and power by disciplining and punishing members who did not comply with codes or rules; and

- retaliating with acts of violence and intimidation against non-members and rival gang members who committed acts against members, family of members, or the enterprise.

Id. ¶¶ 3-8, 13-15. According to the indictment, "[i]t was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity [drug distribution or murder] in the conduct of the affairs of the enterprise." Id. ¶¶ 19-20. The indictment then provides a laundry list of purported actions, or "overt acts," taken by the individual Defendants "[i]n furtherance of the conspiracy and in order to affect [sic] the objects thereof." Id. ¶¶ 21-71.

3

In regard to the organizational structure of the group, the indictment claims that the Howard Boys "had a horizontal structure where status and respect was [sic] acquired in a large part by the commission of acts of violence." Id. ¶ 17.

Lastly, the indictment discusses the historical attributes of the organization. According to the indictment, the Howard Boys have existed since at least 2002 and consist of young and old members. Id. ¶¶ 18-19. Older members refer to themselves as "Hot Boys" or "HB's," while younger members use names such as "Murda Ville," "MV's," and "MV-HB's." Id. ¶ 9. According to the indictment, all of the members consider themselves "Howard Boys." Id.

In addition to Racketeering Conspiracy, Defendant Norwood also is charged with Murder in Aid of Racketeering, arising from the death of Jonathan Parker on July 17, 2004. Id., Count Two, ¶¶ 1-3. The indictment claims that Defendant murdered Parker "as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Howard Boys, and for the purpose of gaining entrance to and maintaining and increasing his position in the Howard Boys." Id., Count Two, ¶ 3.

### III. STANDARD OF DECISION

An indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To be sufficient, an indictment generally must "fully, directly, and expressly . . . set[] forth all the elements necessary to constitute the offense intended to be punished." United States v. Schaffer, 586 F.3d 414, 422 (6th Cir. 2009) (quoting United States v. Douglas, 398 F.3d 407, 411 (6th Cir. 2005)). "In particular, the indictment must: (1) 'set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces,' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the

4

same crime based on the same facts.'" Id. (internal citations and brackets omitted).

Federal Rule of Criminal Procedure 12(b)(3)(B) permits a defendant to bring a motion challenging "a defect in the indictment or information," including a claim that the "indictment or information fails to invoke the court's jurisdiction or to state an offense." When deciding a motion to dismiss, the court is "limited to the four corners of the indictment and . . . the allegations in the indictment are assumed to be true and viewed in the light most favorable to the Government." United States v. Scott, No. 10-20235, 2013 WL 979465, at *1 (E.D. Mich. Mar. 13, 2013) (internal citations omitted); see also 1A Charles Alan Wright, et al., Fed. Practice & Procedure § 191 n.13 (4th ed. 2013) ("In consideration of a motion to dismiss the indictment as being insufficient, the court's determination must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict. Generally speaking, it is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury.").

## IV. ANALYSIS

Defendant seeks dismissal of the two counts charged against him: Racketing Conspiracy (RICO) (Count One) and Murder In Aid of Racketeering (Count Two), which is tied to the underlying RICO claim. Am. First Superseding Indictment (Dkt. 191). The elements of a RICO claim are: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity. See Ouwinga v. Benistar 419 Plan Servs. Inc., 694 F.3d 783, 791 (6th Cir. 2012) (citing Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006)); see also United States v. Fowler, 535 F.3d 408, 420 (6th Cir. 2008) (RICO conspiracy satisfied where evidence shows defendant "intended to further an endeavor which, if completed, would satisfy all of the elements of a

substantive [RICO] criminal offense.") (internal citations and quotation marks omitted). Defendant challenges the sufficiency of the indictment on elements (2), (3) and (4).

### A. Enterprise

Defendant first argues that the indictment does not sufficiently allege the requirements for an "enterprise." Def.'s Br. at 9-10. He claims that the indictment "fails to allege any facts to give notice of an enterprise structure, relationship among, or roles of the members of the enterprise and their decision making process." Id. at 9.

The United States Code defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Sixth Circuit, looking to Supreme Court precedent, has held that "the term 'enterprise,' like the RICO statute itself, should be interpreted broadly." In re ClassicStar Mare Lease Litig., 727 F.3d 473, 492 (6th Cir. 2013); see also Boyle v. United States, 556 U.S. 938, 944 (2009) ("The term 'any' ensures that the definition has a wide reach . . . and the very concept of an association in fact is expansive." (internal citations omitted)). Indeed, "the RICO statute provides that its terms are to be 'liberally construed to effectuate its remedial purposes.'" Boyle, 556 U.S. at 944 (citing § 904(a), 84 Stat. 922, 947, note following 18 U.S.C. § 1961).

The term "enterprise" consequently also has been described more broadly as "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981) (prove enterprise by showing "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit . . . separate and apart from the pattern of activity in which it engages."). It has

also been interpreted as requiring "simply a continuing unit that functions with a common purpose." Ouwinga, 694 F.3d at 794 (quoting Boyle, 556 U.S. at 948).

The United States Supreme Court clarified in Boyle that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 556 U.S. at 946.

As to the first element — purpose — the parties do not seriously dispute that the indictment contains sufficient allegations for this requirement. The indictment contains an express list of purposes for the Howard Boys, including: promoting, protecting, and enhancing the authority, reputation, and standing of the group through the use of intimidation, threats and violence; maintaining control over a specified territory to further the distribution of controlled substances; enriching its members through the sale of controlled substances and weapons; and enforcing its authority by punishing and retaliating against rivals, persons who try to invade on the enterprise's selling territory, and those who did not follow the code or rules. Am. First Superseding Indictment at ¶¶ 3-8.

In regard to the third element — longevity sufficient to permit these associates to pursue the enterprise's purpose — the indictment claims the Howard Boys have been operating for over ten years and is composed of both young and old members. Id. at ¶¶ 9, 18-19. Defendant does not dispute that the indictment is sufficient with respect to this factor either.

Defendant focuses on the second element — relationships among those associated with the enterprise. See Def.'s Br. at 9. Defendant contends the indictment is deficient on this aspect of the enterprise because it does not allege: "(1) any framework or superstructure for making and carrying out decisions; (2) that the so-called 'Howard Boys' functioned as a continuing unit with

7

established duties of any kind; [or] (3) any ascertainable structure beyond the alleged pattern of racketeering activity alleged in the Indictment." Def.'s Reply at 3. Defendant argues that such an ascertainable structure is required "to distinguish a charge of RICO enterprise used to carry out a series of criminal acts from a mere association of individuals." Def.'s Br. at 2 (Dkt. 215). Here, Defendant claims the indictment does nothing more than describe "individuals who may have lived in the same neighborhood and who . . . may have shared the same community identification." Id. at 10; see also id. ("Criminal acts carried out among neighbors or friends without a structure, some form of roles and decision-making is not within the scope of an enterprise or the RICO statute.").

The Government responds that Boyle does not require an ascertainable structure of decision-making and roles/responsibilities beyond that "inherent in the pattern of racketeering activity in which it engaged." Gov't Resp. at 9-10. In addition, the Government contends that the indictment sufficiently delineates the roles and relationships of the defendants, "setting forth the evolution of the enterprise through the amalgamation of older and younger members, the activities in which they participated, the ways in which they demonstrated their association to the enterprise, and the gaining of status and respect among members and associates." Gov't Reply at 3 (Dkt. 300).

The element of "structure" is to be interpreted broadly so as to effectuate RICO's purpose. See Ouwinga, 694 F.3d at 794. The Supreme Court noted in Boyle that an enterprise

> need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods — by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an

> enterprise whose associates engage in spurts of activities punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique.

Boyle, 556 U.S. at 948. Indeed, a plaintiff need only show "a continuing unit [formal or informal] that functions with a common purpose." Ouwinga, 694 F.3d at 794 (quoting Boyle, 556 U.S. at 948); see also Boyle, 556 U.S. at 944-945 (enterprise "'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a unit'") (quoting Turkette, 452 U.S. at 583). Moreover, the Sixth Circuit has noted that "[c]ommon sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." Ouwinga, 694 F.3d at 794 (citing Boyle, 556 U.S. at 942 n.1). Indeed, "a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." Boyle, 556 U.S. at 951.

Here, the indictment charges that the Howard Boys used intimidation and violence to protect a defined territorial area so that they could exclusively control the distribution of controlled substances and weapons in the territory. Am. First Superseding Indictment ¶¶ 1-20. The indictment includes several instances of supporting conduct by the Defendants, including sales of controlled substances and acts of violence, i.e., murder, in furtherance of the enterprise. Id. ¶¶ 21-71. Although there is no alleged leader or decision maker, the indictment contends that "[t]he enterprise had a horizontal structure where status and respect was [sic] acquired in large part by the commission of acts of violence." Id. ¶ 17. This is in line with the Supreme Court's holding that an enterprise's "decisions may be made . . . by . . . a show of strength." Boyle, 556 U.S. at 948. Indeed, the indictment notes that Defendant Norwood committed an act of murder

9

"for the purpose of gaining entrance to and <u>maintaining and increasing his position in the Howard Boys</u>." Am. First Superseding Indictment, Count Two, ¶ 3 (emphasis added).

In addition, the indictment provides sufficient details identifying the enterprise to put Defendant on notice of the purported scope of the group. The indictment identifies the precise boundaries of the purported territory, names the group's base as the Howard Estates, describes the nicknames members use for the group, and notes that members often use graffiti, tattoos, handshakes, hand signals, and social media to identify themselves as members. <u>Id.</u> ¶¶ 9, 12.

Defendant is correct that the indictment does not describe in detail how decisions were made or the precise roles and duties of each of the Defendants in the entity. Nevertheless, the indictment does explain that members gained status and respect through the commission of acts of violence, which, in turn, were done to further the group's exclusive drug distribution. These claims concerning the Howard Boys' identification and purpose are sufficient to support an allegation that the group was "a continuing unit that functions with a common purpose," <u>Ouwinga</u>, 694 F.3d at 794, rather than a random assortment of independent individuals committing various, unrelated crimes and who all happened to live in the same area. Def.'s Br. at 10.; <u>see also</u> <u>Boyle</u>, 556 U.S. at 948 (an enterprise does not need to have a hierarchical structure); <u>Ouwinga</u>, 694 F.3d at 794 ("Common sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure.").

At oral argument, defense counsel also emphasized that the indictment contains no more information about an ascertainable structure than is required for an ordinary conspiracy claim. The Court disagrees. The Sixth Circuit has held that "while there must be some structure to distinguish an enterprise from a mere conspiracy, there does not have to be much." <u>United States</u>

v. Nagi, --- F. App'x ---, 2013 WL 5433464, at *8 (6th Cir. Sept. 30, 2013). The Supreme Court also addressed counsel's concern in Boyle:

> [P]roof that a defendant conspired to commit a RICO predicate offense — for example, arson — does not necessarily establish that the defendant participated in the affairs of an arson enterprise through a pattern of arson crimes. Under § 371 [making it illegal to conspire to commit one or more crimes listed as RICO predicate offenses], a conspiracy is an inchoate crime that may be completed in the brief period needed for the formation of the agreement and the commission of a single overt act in furtherance of the conspiracy. . . . [RICO] demands much more: the creation of an "enterprise" — a group with a common purpose and course of conduct — and the actual commission of a pattern of predicate offenses.

556 U.S. at 949-950 (internal citations omitted). Subsequent courts have interpreted this language, in combination with past precedent and the three elements outlined earlier, to distinguish a RICO claim from an ordinary conspiracy claim by requiring that the defendants "us[ed] an enterprise to engage in a pattern of racketeering activity." Jay E. Hayden Foundation v. First Neighbor Bank, N.A., 610 F.3d 382, 388-389 (7th Cir. 2010) (emphasis in original) (dismissing RICO claim where claim did not allege that defendants used the bank, i.e., the enterprise, to commit their fraud); see also Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) ("liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs") (emphasis in original).

Here, the indictment does allege that the Defendants used the enterprise — i.e., the Howard Boys gang — to commit the overt acts. The indictment charges that the over-a-decade-old group maintained and protected a defined territory to become the exclusive drug distributors within the area. Am. First Superseding Indictment ¶ 10. The indictment further alleges that the Howard Boys used threats and violence, including providing firearms to its members for such violence, to protect this territory out of a fear that, if they failed to do so, "their stature and ability to deal drugs would be lessened and their territory threatened or lost." Id. ¶¶ 11-12. In other

11

words, the indictment does more than allege a general conspiracy among the individual Defendants to sell controlled substances. Rather, it contends that the Defendants acted as a defined unit — identified by nicknames, hand signals, handshakes, tattoos, graffiti, and more — within a territory protected by members through threats, intimidation, and violence, and that Defendants used the group's reputation to ensure that its members — and not its rivals — continued to prosper as the exclusive controlled substance distributors. See id. ¶¶ 10-12.

The indictment sufficiently alleges that Defendants used the Howard Boys — a continuing unit — for the common purpose of furthering their purported racketeering activities. While Defendant argues that the indicted individuals are nothing more than a group of people who "shared the same community identification . . . and who through local culture used the same slang or graffiti," Def.'s Br. at 10, that is an argument for trial, not a sufficient basis for dismissing the indictment. See United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012) ("A pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.") (internal quotation marks and citations omitted).

### B. Pattern of Racketeering Activity

Defendant also challenges the sufficiency of the allegations concerning a "pattern of racketeering activity." Def.'s Br. at 10-11 (Dkt. 215). He claims that "[o]ther than general and conclusory statements . . ., the Indictment contains no facts to suggest how the overt acts are connected to the affairs and operations of a criminal enterprise." Id. at 11.

The Government responds that it need not include a list of predicate acts to support a RICO conspiracy charge, as opposed to a substantive RICO violation. Gov't Resp. at 11-14 (Dkt. 289). Rather, the Government contends that it need only "charge . . . that the defendant knowingly joined in a conspiracy the objective of which was to operate that enterprise through

an identified pattern of racketeering activity." Id. at 14 (quoting United States v. Glecier, 923 F.2d 496, 500 (7th Cir. 1991)). Nevertheless, the Government points out that the indictment does set forth a pattern of racketeering activity through the list of overt acts committed "in furtherance of the conspiracy and in order to affect [sic] the objects thereof." Id. at 15.

The Supreme Court has held that "[t]here is no requirement of some overt act or specific act" in the RICO conspiracy statute, "unlike the general conspiracy provision applicable to federal crimes." Salinas v. United States, 522 U.S. 52, 63 (1997); see also United States v. Saadey, 393 F.3d 669, 677 (6th Cir. 2005) ("conviction on a charge of RICO conspiracy does not require the government to prove that any predicate act was actually committed at all." (emphasis in original)). Indeed, the Supreme Court clarified in Salinas that

> [a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. . . . One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.

Salinas, 522 U.S. at 65.

Although the Sixth Circuit has not yet directly concluded that an indictment does not need to contain a description of predicate acts, such a rule is a logical extension from the fact that the Government need not prove a predicate act at trial to obtain a conviction for RICO conspiracy. See Glecier, 923 F.2d at 500 (indictment need not contain predicate acts for a RICO conspiracy claim); see also United States v. Dimora, 829 F. Supp. 2d. 574, 586 (N.D. Ohio 2011) (same).

Nevertheless, the indictment still must allege that the Defendants "intended to further a pattern of racketeering activity." See Dimora, 829 F. Supp. 2d. at 586. In other words, "[t]he indictment must allege specific crimes or types of crimes that the conspiracy agreed to commit

13

and that would constitute a 'pattern of racketeering activity' if carried out." Id.; see also United States v. Applins, 637 F.3d 59, 81-82 (2d Cir. 2011) (collecting cases and holding that "[b]ecause a RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed, . . . it is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity.") (internal citations omitted).

To qualify as a pattern of racketeering activity, the intended or actual criminal acts "in connection with the conspiracy" must have been "related to its illegal purposes," and "constitute a threat of ongoing criminal activity." United States v. Corrado, 227 F.3d 543, 554 (6th Cir. 2000) (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 243 (1989) and Sedima, S.P.R.L. v. Imrex, 473 U.S. 479, 496 (1985)). This is known as the "relationship plus continuity" test. Id. Therefore, the indictment must allege that Defendants intended to further a pattern of conduct that was or would have been connected to the enterprise's illegal purposes and that constituted a threat of ongoing criminal activity. See id.

Defendant challenges the "relationship" aspect; he claims the indictment insufficiently alleges that the predicate acts are related to the enterprise. Def.'s Br. at 11. Defendant argues that the "general and conclusory" statement that the overt acts were "in furtherance of the conspiracy and in order to affect [sic] the objects thereof," is not enough. Id.

The relationship test can be met by proof that (1) the defendant was enabled to commit the offense solely by virtue of his relationship to the enterprise or (2) the offense was related to the activities of the enterprise. United States v. Lawson, 535 F.3d 434, 444 (6th Cir. 2008); see also Ouwinga, 694 F.3d at 795 (predicate acts need not be interrelated with each other, but must be "connected to the affairs and operations of the criminal enterprise"). Here, as Defendant

14

acknowledges, the indictment claims that the illegal controlled substance sales, acts of violence, and murders were committed "[i]n furtherance of the conspiracy and in order to affect [sic] the objects thereof." Am. First Superseding Indictment at ¶ 21. However, as described above, the indictment also explains that these actions were taken to enrich members and to protect the Howard Boys' exclusive rights to sell controlled substances within the defined territory. Id. ¶¶ 9-11.

The indictment further alleges that Defendant Norwood: (1) possessed with the intent to distribute crack cocaine in May 2002; (2) sold crack cocaine to an undercover officer in October 2002; (3) killed Jonathan Parker in July 2004; and (4) possessed firearms and drugs in August 2006. Id. ¶¶ 22-23, 27, 36. Given the Howard Boys' alleged efforts to maintain the exclusive franchise to sell controlled substances within the territory and their use of firearms and violence to maintain this monopoly, the indictment sufficiently connects Defendant's enablement to commit the offenses (e.g., distribution of controlled substances) by virtue of his membership in the group, and that the offenses were related to the activities of the enterprise (i.e., to continue the exclusive drug operations within the territory so as to enrich the group's members).

## V. CONCLUSION

For the foregoing reasons, the Court denies Defendant Norwood's motion to dismiss (Dkt. 215).

SO ORDERED.


Dated: November 8, 2013         s/Mark A. Goldsmith
       Flint, Michigan          MARK A. GOLDSMITH
                                United States District Judge

15

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 8, 2013.

                                             s/Deborah J. Goltz
                                             DEBORAH J. GOLTZ
                                             Case Manager