UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    HON. MARK A. GOLDSMITH

v.                                              Case No. 12-CR-20287

ALEXANDRA NORWOOD, et al.

        Defendants.
_____/

## ORDER EMPANELING AN ANONYMOUS JURY FOR TRIAL

On March 26, 2014, the Court held a conference in this case, at which the subject of an anonymous jury was raised. In response to the Court's invitation to submit briefing on that issue, Defendant Oldham, joined by Defendants Jonathan Walker (Dkt. 476) and Jatimothy Walker (Dkt. 480), filed a memorandum opposing empaneling an anonymous jury. Def. Mem. (Dkt. 462). The Government filed a response, indicating support for keeping the jury anonymous. Gov't Resp. (Dkt. 487). Having reviewed the parties' briefing and the applicable law, and having heard further argument at the final pretrial conference on May 1, 2014, the Court concludes that empaneling an anonymous jury is appropriate in this case.

The law on empaneling an anonymous jury is well-established within the Sixth Circuit. "The decision to empanel an anonymous jury is within the sound discretion of the trial court." United States v. Lawson, 535 F.3d 434, 439 (6th Cir. 2008). Circumstances suggesting that "[t]he anonymity of a jury should be preserved" include, but are not limited to, where:

> (1) a dangerous defendant is alleged to have been a participant in large-scale organized crime, to have participated in mob-style killings and had previously interfered with the judicial process; (2) a defendant has a history of attempted jury tampering and serious criminal records[;] and (3) there are allegations of dangerous and

1

> unscrupulous conduct by the defendant, coupled with extensive pretrial publicity.

United States v. Kilpatrick, No. 10-20403, 2012 WL 3237147, at *2 (E.D. Mich. Aug. 7, 2012) (citing Lawson, 535 F.3d at 439) (internal quotation marks omitted). "The federal courts, including the Sixth Circuit, have also recognized that the anonymity of a jury should be preserved when [there is] extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment." Id. (quotation marks and citations omitted). Clearly, then, there "is no constitutional right to a public jury." Lawson, 535 F.3d at 440.[1]

The Jury Selection Plan for the Eastern District of Michigan expressly permits keeping the jury anonymous. The Plan provides that "[n]ames and personal information of grand and petit jurors will not be disclosed to attorneys, parties, the public, or the media," except that, "upon order of the court, names and counties of residence of prospective petit jurors may be disclosed to the attorneys or parties in a case set for trial after those jurors have appeared for service." See Juror Selection Plan, 13-AO-016, § (t)(2), (3) (approved Mar. 6, 2013). In other words, anonymity before jury selection begins is the status quo. The Plan does allow for the public disclosure of names and county of residence of petit jurors after the conclusion of jury selection, but "[a]ny district judge may order juror names to be kept confidential in any case when the interests of justice so require." Id.

The Sixth Circuit has instructed that, if an anonymous jury is empaneled, "the court must ensure that the defendant retains his or her right to an unbiased jury by conducting a voir dire designed to uncover bias as to issues in the case[] and as to the defendant himself, and by

---

[1] For this reason, the Court rejects Defendants' conclusory argument that, "Seating a jury whose members are not even named to defense counsel violates the Sixth Amendment right to a public trial and the Sixth Amendment and Fifth Amendment Due Process rights to an impartial jury." Def. Mem. at 2.

providing the jury a neutral and non-prejudicial reason for requiring that it be anonymous, so that jurors will refrain from inferring that anonymity was necessary due to the character of the defendant." United States v. Tally, 164 F.3d 989, 1001-1002 (6th Cir. 1999).

Defendants Oldham, Jatimothy Walker, and Jonathan Walker argue that the "only factor in favor of an anonymous jury in this case is whether extensive publicity increases the possibility that jurors would be exposed to intimidation and harassment." Def. Mem. at 1. The Court agrees that this is one factor weighing in favor of empaneling an anonymous jury; and it is a factor that finds support in numerous news articles from across the country discussing the investigation into the alleged enterprise, this case, and these Defendants. See Exhibits to Gov't Resp. (Dkts. 487-2 to 487-15). Continued significant media attention is likely as this case proceeds through trial.

However, the Court disagrees that media attention is the "only factor in favor of an anonymous jury in this case." Def. Mem. at 1. The nature of the charges also weighs in favor of empaneling an anonymous jury. See United States v. Koubriti, 252 F. Supp. 2d 418, 422 (E.D. Mich. 2003) (proper to consider nature of charges); see also Lawson, 535 F.3d at 439 (proper to consider allegations of "dangerous and unscrupulous conduct").

The Amended First Superseding Indictment alleges that Defendants participated in a criminal enterprise designed to promote the exclusive sale of drugs within a specified geographic location. The indictment claims that Defendants controlled their territory and reputation through intimidation, fear, and violence, see Am. First Superseding Indictment ¶ 10 (Dkt. 191); indeed, the indictment alleges numerous violent overt acts, and includes counts of murder and attempted murder in aid of racketeering. The indictment also asserts that members of the alleged enterprise "intimidated witnesses to deter them from providing information to law enforcement and to

3

enforce a 'no snitching' code. Persons and members who failed to adhere to the code were subjected to violent acts." Id. ¶ 13. These allegations certainly fall within the "dangerous and unscrupulous" standard set forth in Lawson.

Moreover, at least some of the Defendants face possible life sentences if convicted, which is one factor courts have considered when deciding to empanel an anonymous jury. See United States v. Sierra-Rodriguez, No. 10-20338, 2012 WL 1199018, at *2 (E.D. Mich. Apr. 10, 2012) (citing United States v. Warman, 578 F.3d 320, 343-344 (6th Cir. 2009)). Courts generally consider this factor because it may "increase[e] the likelihood that [defendants] would resort to extreme measures to influence the outcome of their trials." Id. This is particularly relevant in this case in light of the already-existing allegations of witness intimidation.[2]

In sum, the substantial pretrial publicity this case has received, coupled with the allegations of "dangerous and unscrupulous conduct," convinces the Court that keeping the potential jurors' identifying information undisclosed to the public is appropriate. See Tally, 164 F.3d at 1001; Lawson, 535 F.3d at 440. Even Defendants concede that, with respect to the media concern, the "remedy is simple: do not identify jurors publicly by name." Def. Mem. at 2.

Nevertheless, Defendants argue that their counsel should receive juror identifying information. They claim that "[p]rohibiting counsel from investigating prospective jurors' backgrounds would violate the right to an impartial jury" because, "when a juror's identity is unknown[,] . . . biases are difficult or impossible to discover" during voir dire. Def. Mem. at 3. Defense counsel also argued at the May 1, 2014 hearing that identifying information is necessary

---

[2] The Court emphasizes that this decision should not be read as any form of decision on the merits of the Government's allegations. And, as discussed infra, the Court will supply a neutral explanation to the jury regarding anonymity to safeguard Defendants' right to the presumption of innocence. Nevertheless, as explained in Lawson and Koubriti, the Court should not be blind to the nature of the charges when deciding whether to empanel an anonymous jury.

4

so counsel can monitor the jurors' social-media accounts during trial to assure that jurors are not discussing the case.

With respect to counsel's claim that they need identifying information for voir dire, the Court notes that it has already implemented significant measures for empaneling an impartial jury. The prospective jury pool appeared before the Court on March 27, 2014 and completed a 24-page, 99-question juror questionnaire — developed by counsel — to which counsel has received the responses. The fundamental purpose of the questionnaire was to reveal potential bias. That goal was accomplished, as evidenced by the agreement of the parties to strike 63 potential jurors for cause. As such, the questionnaire has been clearly effective in helping to ensure an impartial jury.

The questionnaire answers also provide a significant amount of information for counsel to use for targeted questioning during voir dire. As Judge Edmunds noted in the Kilpatrick case, "[t]he answers prospective jurors provide in their juror questionnaires will provide a wealth of information that can be plumbed during individual voir dire." Kilpatrick, 2012 WL 3237147, at *3; see also id. at *4 ("Defendants will have at their disposal a detailed juror questionnaire that they helped create so as to ferret out prejudicial bias, followed by individual voir dire that presents another opportunity to ferret out any bias."); United States v. Branch, 91 F.3d 699, 725 (5th Cir. 1996) (in case with juror questionnaires, "the contention that the use of the anonymous jury hindered the [defendants'] ability to select an impartial jury sorely underestimates the ability of counsel to use the available 'arsenal of information' about each prospective juror"). Defendants can, therefore, explore the juror questionnaire answers further during voir dire to assure an impartial jury, even without access to the jurors' names.

Furthermore, "[i]n the ordinary empaneling of juries in this Court, attorneys do not have an opportunity to corroborate or investigate potential jurors. Names are provided and jurors selected all in a single proceeding." Kilpatrick, 2012 WL 3237147, at *3. An Administrative Order in this district specifically provides that "the clerk may not disclose any juror qualification form [which includes the jurors' names] of any person in preparation for the venire under any circumstances except upon order of the court in connection with a challenge" under the Jury Selection and Service Act, 28 U.S.C. § 1861, et seq. See Administrative Order 05-AO-020 (effective Sept. 29, 2012). Therefore, the fact that the Court already authorized the use of extensive juror questionnaires goes beyond what Defendants' counsel would receive in a standard trial when preparing for voir dire. Defendants' suggestion that they absolutely need the potential jurors' identifying information to maintain their right to an impartial jury is, thus, unwarranted.

The Court similarly concludes that counsel's alleged need for juror identifying information to monitor jurors during trial is meritless. Defense counsel claims monitoring is necessary to assure that jurors are not discussing the case. As explained by Judge Edmunds in the Kilpatrick decision, however, the monitoring that defense counsel proposes would "unnecessarily chill the willingness of jurors summoned from our community to serve as participants in our democratic system of justice." Kilpatrick, 2012 WL 3237147, at *3 (quotation marks and citation omitted). Citizens who are asked to forego work and family responsibilities for what is expected to be a two-month trial should not be subjected to covert surveillance as well. See id. This surveillance is unwarranted because the law presumes that jurors are able to follow instructions not to discuss the case publicly or with others. See United States v. Starnes, -- F. App'x --, 2014 WL 211823, at *4 (6th Cir. Jan. 21, 2014) ("[W]hen a

6

court instructs a jury to do something, there is a strong presumption that the jury will follow that instruction."). In fact, the juror questionnaires specifically asked whether the prospective juror would be able to follow this command. Counsel may explore this point further during voir dire.[3]

Lastly, the Court rejects any argument by Defendants that empaneling an anonymous jury undermines their presumption of innocence. This argument has been squarely addressed and rejected by the Sixth Circuit and numerous courts in this district. See, e.g., Koubriti, 252 F. Supp. 2d at 423; Talley, 164 F.3d at 1002. To avoid any such possible prejudice, the Court will provide a neutral reason to the jury for maintaining their anonymity, such as media attention and/or the large number of prospective jurors. See Sierra-Rodriguez, 2012 WL 1199018, at *3.

For the above reasons, the Court will empanel a totally anonymous jury. The parties shall submit proposed language for the Court to read to the jury explaining the reason for anonymity with their joint voir dire memorandum on **May 8, 2014**. See 3/28/14 Order (Dkt. 477, ¶ 11).

SO ORDERED.

Dated: May 6, 2014  s/Mark A. Goldsmith
Flint, Michigan  MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 6, 2014.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager

---

[3] Defendants have offered no case authority rejecting jury anonymity in the name of investigating or monitoring jurors when balanced against allegations of witness tampering, violent acts, and potential life sentences. Even courts ordering partially anonymous jurors — whose names are revealed only to counsel — have prohibited counsel from conducting any investigation into the jurors. See, e.g., Kilpatrick, 2012 WL 3237147, at *4; United States v. Stone, No. 10-20123, 2012 WL 113479, at *3 (E.D. Mich. Jan. 13, 2012).