UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 12-CR-20287

v.

HON. MARK A. GOLDSMITH

ALEXANDRA NORWOOD, et al.,

        Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT GILLS'S MOTION TO BAR USE OF TRANSCRIPTS OF RECORDED CONVERSATIONS AT TRIAL (Dkt. 366)

### I. INTRODUCTION

Before the Court is Defendant Leon Gills's motion to bar the use of transcripts of recorded conversations at trial (Dkt. 366).[1]  Gills argues that transcripts should not be used at trial because the transcripts will not aid the jury and makes specific objections to two transcripts prepared by the Government.  The matter is now fully briefed and, after due consideration of the parties' arguments, the Court denies the motion for the reasons set forth below.

### II. BACKGROUND

Gills filed the instant motion after the Government provided notice that it would seek to use transcripts of audio recordings at trial. Gills Mot. ¶ 1 (Dkt. 366).  After the Government filed its response brief under seal and Gills filed his reply brief (Dkt. 385), the Court issued an Opinion and Order, which (i) reserved ruling on the motion until after the parties had an opportunity to confer and resolve issues regarding the accuracy of the proposed transcripts, (ii) set forth a supplemental briefing schedule, and (iii) determined that oral argument would not aid

---

[1] Joinders/Notices of Concurrence were filed by Defendants Jonathan Walker (Dkt. 367), Alexandra Norwood (Dkt. 369), Jatimothy Walker (Dkt. 371), Johnathan Oldham (Dkt. 373), and Jamil Cureton (Dkt. 375).

the decisional process under Local Rule 7.1(f)(2). 3/17/14 Order (Dkt. 408). The parties duly filed supplemental briefs (Dkts. 490 and 512), which revealed that the dispute over the transcripts pertained to two different sets of conversations: instances where Gills had spoken to an individual named Shawn Gardner over a jail telephone system and instances where Gills had spoken to former co-defendant Carvell Gordon in Genesee County Jail, who at the time was wearing a wire.[2] The briefing also indicated that the parties had not conferred, but were willing to do so in an effort to reach a stipulation.

The Court then ordered the parties to confer and submit a joint memorandum outlining specific objections and responses. 4/9/14 Order (Dkt. 514). On April 16, 2014, the parties filed a joint memorandum stating that the parties had resolved their differences regarding the accuracy of the transcripts, but that Gills did not withdraw his earlier objections. Joint Mem. (Dkt. 524). This Opinion and Order addresses those remaining objections.

### III. ANALYSIS

In the Court's previous Opinion and Order, the Court noted that whether a jury may use a transcript follows no bright-line rule. 3/17/14 Op. (Dkt. 408). It is well-established, however, that courts have discretion to allow a jury to use a transcript if the related recording is "authentic, accurate and trustworthy." United States v. Robinson, 707 F.2d 872, 876 (6th Cir. 1983). "The ideal procedure for testing accuracy is to have the prosecution and defense attorneys stipulate to a transcript." Id.

Here, the parties have resolved any concerns regarding accuracy, as stated in the joint memorandum. Joint Mem. at 1 (stating that "counsel have met and resolved all challenges to the accuracy"). With issues concerning the accuracy of the transcripts resolved, the joint

---

[2] Gills filed a supplemental brief on April 1, 2014 (Dkt. 488), but then filed an amended brief the next day (Dkt. 490), which is the one the Court considers.

memorandum states that the only issues that remain are Gills's previous arguments. Id. at 2. Upon review of the briefing, Gills's remaining arguments regard the general use of transcripts and specific objections regarding two transcripts.[3]

### A. Use of Transcripts[4]

Gills seeks to bar the use of transcripts in general, arguing that, while "transcripts may be used as an aid," transcripts are unnecessary and inherently prejudicial in this case. Def. Br. at 6. Gills maintains that the risk is too great that the jury will consider the transcripts, rather than the recordings themselves, as evidence of the conversations. Def. Br. at 6-7, Reply Br. at 7-8. Gills argues that the use of transcripts will distract the jury from the context, "verbal cues, pauses, voice inflections and intonations," which "express the tenor and nature of the conversation." Def. Br. at 6-7. According to Gills, transcripts should not be used at all because the recordings are in English, and transcripts will be superfluous because the recordings are clearly audible. Id. at 8.

In response, the Government argues that the transcripts will aid the jury in listening to the recordings, especially because the recordings reflect "informal conversations" and the acoustics of the courtroom "make hearing and following poorly articulated voices difficult." Gov't Resp. at 5. The Government notes that Gills does not cite any authority for the proposition that transcripts will distract the jury from listening "to the pauses and inflections of the speaker's [sic] voices." Id. The Court agrees with the Government and rejects Gills's arguments.

---

[3] Because the parties have stipulated to the accuracy of the transcripts, Joint Mem. at 1 (Dkt. 524), Gills's arguments regarding accuracy have been mooted. See Def. Br. at 5 (concerning identity of speakers); Reply Br. at 2-6 (concerning numerous "unintelligible" annotations), 7 (concerning completeness of transcripts).

[4] Gills made this argument against the general use of transcripts upon the circulation of the rough transcripts by the Government. Gills did not further develop this argument after conferring with the Government as to the accuracy of the transcripts.

First, Gills's arguments that the transcripts should not be used because they fail to reflect speech patterns and are superfluous because the recordings are in English and of good quality are not persuasive in light of the great weight of case law. Courts consider transcripts to be beneficial in aiding the jury to determine a recording's accuracy, United States. v. Bullock, 130 F. App'x 706, 713 (6th Cir. 2005), and, in cases where the parties have stipulated to a transcript's accuracy, courts allow the jury to use the transcript at trial. United States v. Gallagher, 57 F. App'x 622, 625 (6th Cir. 2003) (court allowed the jury to use a transcript where the parties had stipulated to all but two sentences in a thirty-page transcript); see also United States v. Segines, 17 F.3d 847, 854 (6th Cir. 1994) ("The use of a transcript of taped recordings is permissible as an aid to the jury, within the discretion of the trial court, when certain procedures are followed for determining its accuracy."). The Court concludes that transcripts will aid the jury in understanding what is being said on the audio recordings and sees no reason to keep this tool from the jury where the parties have stipulated to the transcripts' accuracy.

As concerns Gills's argument that the jury will consider the transcripts as evidence, the Court will instruct the jury that the transcripts are not evidence and that the transcripts are to be used only as an interpretive aid. See, e.g., United States v. Scott, No. 06-20185, 2011 WL 4905522, at *2 (E.D. Mich. Oct. 14, 2011) (stating that court would provide an instruction to jury that transcripts are not evidence). "There is a well-established presumption that jurors follow their instructions." Id. (citing Cyars v. Hofbauer, 383 F.3d 485, 493 (6th Cir. 2004)).

### B. Specific Objections

Gills also did not withdraw his specific objections to two transcripts concerning phone calls between Gills and Shawn Gardner made over a jail phone system.[5] These objections, however, have nothing to do with the accuracy of the words of the transcripts, but with the meaning or punctuation of the transcripts.

#### 1. First Objection

With respect to the first objection, the relevant transcript text is as follows: "I had went out there on a (UI) I had went out there by the (UI) rope some shit real quick." According to this transcript's key, the notation of "UI" means "unintelligible." 4/09/09 Tr. (Dkt. 490-5).

Gills argues that these lines "are rendered nonsensical by the two 'UI's' appearing in an apparent single sentence. These two lines could, and should, be deleted, as doing so would not disturb the flow of the transcript otherwise." Gills Supp. Br. at 4 (Dkt. 490). In response, the Government argues that "the transcript is accurate and the unintelligible portions do not render the whole [transcript] untrustworthy." Gov't Supp. Br. at 4 (Dkt. 512).

Importantly, the Court observes that Gills's objection has nothing to do with the accuracy of the transcript in reproducing in written form the content of the audio recording. Instead, Gills argues that the lines lack meaning because of the two "UI" annotations. The Court overrules this objection. The Court's concern is whether the transcripts accurately reflect the recording. There is no accuracy concern here. The parties are free to argue the meaning of these lines to the jury. See United States v. Montor-Torres, 449 F. App'x 820, 822 (11th Cir. 2011) (noting that, in cases using transcripts, "the real issue presented" is "the content and meaning of the tape recording").

---

[5] Although not fully explained by the parties, Gardner apparently was an inmate at the Cooper Street Correctional Facility in Jackson, Michigan, and spoke to Gills on the phone numerous times.

Accordingly, Gills's first objection is overruled.

### 2. Second Objection

Gills's second objection concerns the following transcript text: "I know shit but I need to let I." 4/25/09 Tr. (Dkt. 490-6).

Gills argues that "the last line is a 'sentence' that obviously is not a sentence, and the recording itself reveals it was 'cut off,' mid-sentence. Therefore, it should be deleted altogether." Gills Supp. Br. at 4-5 (Dkt. 490). The Government responds that "the transcript accurately reflects the content of the call which was cut-off in the middle of a sentence." Gov't Br. at 4 (Dkt. 512).

Like the first objection, this objection does not take issue with the accuracy of the words of the transcript. Instead, Gills takes issue with the use of a period — indicating the end of a sentence — when the call was obviously cut-off, as agreed by the Government. In considering this punctuation-oriented objection, the Court notes that it has the discretion to make non-substantive changes or changes that do not affect the meaning of the transcript. United States v. Adams, 722 F.3d 788, 824 (6th Cir. 2013). The Court also notes that a period generally marks the end of a declarative or an imperative sentence, but that an em-dash may indicate an interruption in dialogue. Chicago Manual of Style Online §§ 6.12, 6.84, available at http://www.chicagomanualofstyle.org /home.html.

In light of the case law, the relevant grammar principles, and the parties' agreement that the call was cut-off in the middle of a sentence, the Court resolves this objection by ordering that the concluding punctuation be changed from a period to an em-dash. The transcript should reflect the following: "I know shit but I need to let I —".

Accordingly, Gills's second objection is overruled.

6

## IV. CONCLUSION

For the reasons set forth above, the Court denies Gills's motion to bar transcripts at trial and overrules his specific objections.

SO ORDERED.

Dated: May 7, 2014                    s/Mark A. Goldsmith
      Flint, Michigan             MARK A. GOLDSMITH
                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 7, 2014.

                                           s/Deborah J. Goltz
                                           DEBORAH J. GOLTZ
                                           Case Manager