UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                         Case No. 12-CR-20287

v.

                                         HON. MARK A. GOLDSMITH

ALEXANDRA NORWOOD, et al.,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS'**
**MOTIONS TO SEVER TRIAL (Dkts. 208, 229, 230, 236, 413, 453, 478)**

## I.  INTRODUCTION

Before the Court are six motions to sever trial (and one supplemental/amended motion) filed by various combinations of co-Defendants in the above-captioned case.  See Dkts. 208, 229, 230, 236, 413, 453, and 478.   All of the Defendants, except Jamil Cureton, have sought severance of their trial from at least one other co-Defendant's trial.  Defendants raise a number of concerns in favor of severance, including possible Confrontation Clause issues, risks of prejudicial evidentiary spillover, and mutually-exclusive, antagonistic defenses.  Because the Court concludes that severance is not warranted for the reasons discussed below, the Court denies Defendants' motions.

## II.  BACKGROUND AND ANALYSIS

The facts of this case are fully set forth in the Court's November 8, 2013 Opinion and Order denying Defendant Alexandra Norwood's motion to dismiss (Dkt. 328), and need not be repeated here.  The Court provides a brief summary, however, to provide context for the discussion below.

A grand jury returned a joint indictment against twelve individuals in May 2012. Indictment (Dkt. 3). The indictment charged all of these individuals with RICO conspiracy, claiming that they were members of a criminal enterprise known as the Howard Boys or other names. Id., Count One. The indictment also included other counts against specific individuals. The grand jury subsequently returned a first superseding indictment (Dkt. 155) and an amended first superseding indictment (Dkt. 191), which retained the RICO conspiracy count and added additional counts against specific individuals.

Six of the indicted defendants entered into plea agreements with the Government. As for the remaining individuals — Alexandra Norwood, Jatimonthy Walker, Jonathan Walker, Johnathan Oldham, Leon Gills, and Jamil Cureton — a joint trial is scheduled to begin May 27, 2014.

Currently before the Court are six motions to sever that have been filed and joined by various combinations of individuals.[1] The motions center on three primary arguments: (1) the introduction of statements made by co-Defendants raise constitutional concerns; (2) possible "spill-over" from evidence introduced against co-Defendants is prejudicial; and (3) different Defendants may have defenses that are adverse to each other. The Court addresses each argument in turn.

---

[1] Jatimothy Walker filed the first motion to sever (Dkt. 208), which was joined by Jonathan Walker (Dkt. 245), Oldham (Dkt. 270), and Gills (Dkt. 274), and which was subsequently supplemented (Dkt. 453 (joined by Jonathan Walker (Dkt. 476), Oldham (Dkt. 510), and Norwood (Dkt. 515)). Gills filed the second motion (Dkt. 229), which was joined by Oldham (Dkt. 270). Jonathan Walker filed the third motion (Dkt. 230), which was joined by Jatimothy Walker (Dkt. 243). Former co-defendant Sean Cunningham filed the fourth motion (Dkt. 236), which was joined by Norwood as to certain arguments (Dkt. 261) and Oldham (Dkt. 270). Oldham filed the fifth motion (Dkt. 413), which was joined by Jonathan Walker (Dkt. 424) and Jatimothy Walker (Dkt. 425). Lastly, Norwood filed the sixth motion (Dkt. 478), which was joined by Oldham (Dkt. 510). Cureton has not joined in any of the motions to sever. For ease of reference, the Court will refer to "Defendants" throughout unless referring to a specific individual.

### A.  Co-Defendant Statements

Defendants first seek severance based on statements purportedly made by their co-Defendants that the Government intends to introduce.  Defendants have identified two sets of statements that they believe raise Confrontation Clause concerns warranting severance.  The first is a statement given by Norwood to government agents in August 2011:

> NORWOOD stated he and the others he hung out with identified themselves as the Howard Boys, aka Hot Boys, aka HB's. . . . NORWOOD stated only he and the others he hung out with were able to sell narcotics in the area.  He said that they usually sold drugs on their own, but if there was ever a problem they would protect one another. . . . NORWOOD said the younger guys from the neighborhood now refer to themselves as Murda Ville.  He stated from time to time he would have to deal with some of the younger guys to settle them down.

See Norwood Statement (Dkt. 208-1).

The second statement at issue was given in April 2011 by Jonathan Walker as part of his proffer discussions.  It claims that Jatimothy Walker shot Marion Hardy approximately six times while Jonathan Walker was sitting on a nearby stoop.  See Jonathan Walker Proffer Statement (Dkt. 499-2).  It also names Norwood as someone who lived at Howard Estates, sold crack cocaine, and was present at the shooting of Matthew Oldham.  See id.  Lastly, it describes certain shootings with detail, including one where Johnathan Oldham is named as the shooter.  Id.[2]

---

[2] In his original motion, Jatimothy Walker claimed severance was necessary given the "numerous 'jail conversations' of the other co-defendants."  See Jatimothy Walker Br. at 2 (Dkt. 208). Defendants also broadly claimed that Confrontation Clause issues were raised by co-Defendants' tattoos (Dkt. 230) and rap videos (Dkt. 453).  Given that these statements were not identified with any specificity, the Court ordered Defendants to provide any and all statements they believed raised Confrontation Clause concerns, and to explain why those statements were testimonial.  See 4/1/14 Order (Dkt. 486) (citing United States v. Johnson, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation Clause, the Bruton rule, like the Confrontation Clause itself, does not apply to nontestimonial statements.")).  In response, Defendants only identified the statements by Norwood and Jonathan Walker described above. See Jatimothy Walker Response (Dkt. 499); Norwood Response (Dkt. 504).  Accordingly, with respect to severance, the Court deems Defendants' Confrontation Clause argument abandoned as

Defendants claim these statements raise two concerns under the Confrontation Clause. First, Defendants argue that the Government's introduction of these statements violates their right to confront the declarant, pursuant to the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004).   See Cunningham Mot. at 1-2 (Dkt. 236); Oldham Mot. at 2-3 (Dkt. 413); Jatimothy Walker's Supp. Mot. (Dkt. 453).  Second, Defendants contend that, even if the statements are introduced solely against the declarant-party, they still require severance under the Supreme Court's decision in Bruton v. United States, 391 U.S. 123 (1968).  See, e.g., Jatimothy Walker Mot. at 2 (Dkt. 208);  Gills Mot. at 2-3 (Dkt. 229); Cunningham Mot. at 3 (Dkt. 236); Jatimothy Walker's Supp. Mot. (Dkt. 453); Jatimothy Walker Resp. (Dkt. 499); Norwood Resp. (Dkt. 504).

The Government does not dispute that the statements by Norwood and Jonathan Walker are "testimonial," and thus trigger a Confrontation Clause analysis.  However, the Government argues that the Confrontation Clause does not require severance or prevent the statements' introduction against the declarant-Defendants because the statements — with proposed redactions for Jonathan Walker's April 2011 statements — do not facially incriminate the co-Defendants.  Because the Government has stated that it only intends to introduce the subject statements against the declarant-Defendants, and because the statements, as redacted, do not facially identify any of the remaining Defendants, the Court rejects Defendants' Confrontation Clause argument.

---

to any statements other than those made by Norwood and Jonathan Walker, which have been specifically identified.

The Court further notes that, although Defendants objected to the introduction of a second April 2012 proffer statement by Jonathan Walker, the Government has agreed not to introduce that statement at trial.  See Gov't Resp. at 1 n.1 (Dkt. 516).  Accordingly, the Court need not address whether the introduction of this statement would violate Defendants' rights under the Confrontation Clause.

1.     **Crawford**

Defendants assert that the introduction of co-Defendant Norwood's and Jonathan Walker's statements will violate their right to confront the witness because it is unlikely that these individuals will testify at trial.  See, e.g., Oldham Mot. at 3-4 (Dkt. 413).  In support of this argument, Defendants rely on the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004).  The Government responds that Crawford does not apply because these statements will only be admitted against the declarant-Defendants; they will not be admitted against any other defendant.  See Gov't Resp. at 6-7 (Dkt. 277) ("Norwood's statement will not be admitted against Cunningham, Gills or any defendant but Norwood."); Gov't Resp. at 11 (Dkt. 505) (noting that the admission of Walker's statement — against Walker — does not violate Crawford).

In Crawford, the Supreme Court held that the Confrontation Clause bars the admission of out-of-court testimonial statements made by an unavailable witness that are offered to prove the truth of the matter asserted if the defendant did not have a previous opportunity to cross-examine the witness.  Crawford, 541 U.S. at 53-54.  The Supreme Court later clarified that "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."  Davis v. Washington, 547 U.S. 813, 821 (2006).  Therefore, "[i]f a statement is not testimonial, Confrontation Clause principles do not apply."  United States v. Suggs, 531 F. App'x 609, 617 (6th Cir. 2013).

Although the Supreme Court declined to set forth an exhaustive list of testimonial statements, it did explain that testimonial statements are "directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator."  Davis, 547 U.S.

5

at 826.  The Sixth Circuit has held that the proper inquiry is "whether the declarant intends to bear testimony against the accused."  United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004).  Whether a statement reflects an intent to bear testimony is determined by asking "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime."  United States v. Sutton, 387 F. App'x 595, 601 (6th Cir. 2010) (citations omitted).

Here, the Government does not dispute that the subject statements are testimonial; nor does the Government contend that Norwood or Jonathan Walker are "available" or that Defendants have had a prior opportunity to cross-examine them.  Thus, if the Government was seeking to introduce the statements against co-Defendants, Crawford might well apply.  The Court need not reach this issue, however, because the Government has expressly stated that it only intends to introduce the statements against the declarants.  Gov't Resp. at 6 (Dkt. 277) (Norwood statement); Gov't Resp. at 11 (Dkt. 505) (Walker statement).

This case is thus similar to United States v. Vasilakos, 508 F.3d 401, 407 (6th Cir. 2007). In Vasilakos, two of the defendants argued that the district court erred in admitting into evidence deposition statements made by their co-defendants in prior civil proceedings.  Despite the district court's limiting instruction to the jurors to only consider the statements as evidence against the specific individual who made the statement, the two defendants claimed that the statements' admission violated their rights under the Confrontation Clause.  Id. at 406.  The Sixth Circuit disagreed.  It first noted that the statements were not inadmissible hearsay because they were "offered and received only against the party who made it."  Id. at 407 (citing Fed. R. Evid. 801(d)(2)(A)).  Next, as to the Confrontation Clause argument, the Sixth Circuit noted that the Sixth Amended guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right .

6

. . to be confronted with the witnesses against him." Id. (quoting U.S. Const. amend. VI) (emphasis in original). The Sixth Circuit thus concluded that, "[o]rdinarily when, at a joint trial, a codefendant's prior statement, testimonial or otherwise, is introduced only against the declarant-codefendant, and not against the complaining codefendant, the latter has suffered no violation of his Sixth Amendment Confrontation Clause rights." Id. Similarly here, the Government seeks to introduce the Norwood and Jonathan Walker statements solely against the declarant of each statement; it is not introducing these statements against any of the "complaining codefendant[s]." Id.

Oldham claims that "[t]he jury cannot be expected to limit the use of Norwood's statement to prove the fact there was a gang only against Norwood and not against the others," but Vasilakos — a case concerning a purported conspiracy — teaches otherwise. See id.; see also United States v. Driver, 535 F.3d 424, 428 (6th Cir. 2008) (rejecting similar claim in RICO conspiracy case where complaining codefendant argued that the declarant-codefendant's "statements helped the government prove the drug conspiracy of which [the complaining defendant] was found to be a part"); United States v. West, No. 06-20185, 2009 WL 4043062, at *2-3 (E.D. Mich. Nov. 20, 2009) (rejecting argument that statement in which declarant admitted he was "part of a group" violated Crawford, notwithstanding opponent's claim that statement established an element of the crime charged, i.e., that a conspiracy existed); United States v. Guzman, 7 F. App'x 45, 50-51 (2d Cir. 2001) ("[T]he fact that the statements tended to establish the existence of the enterprise did not violate [defendant's] Bruton rights."); United States v. Stone, No. 05-401, 2007 WL 4560599, at *1 (S.D.N.Y. Dec. 18, 2007) (same).[3]   Accordingly,

---

[3] Moreover, the Government has expressly stated that it does not intend to use Norwood's statement to prove the existence of an enterprise. Gov't Supp. Br. at 2 n.2 (Dkt. 484). This undermines Oldham's suggestion that the jury will use the statement to establish the existence of an enterprise against all Defendants, even if instructed to do so only against Norwood.

because the statements will only be introduced and used against the declarant-Defendants, Crawford is inapplicable. The Court will, of course, provide a limiting instruction at trial. The parties shall submit a proposed instruction to that effect on or before **May 20, 2014**.

### 2. **Bruton** and its Progeny

Even when statements are going to be introduced against the declarant-defendant alone, however, their introduction still may raise constitutional concerns where the statement facially inculpates a non-declarant co-defendant. Defendants argue this to be the case here, claiming that the Supreme Court's decision in Bruton v. United States, 391 U.S. 123, 135-136 (1968), demands severance. See, e.g., Jatimothy Walker Mot. at 2 (Dkt. 208); Cunningham Mot. at 3 (Dkt. 236); Oldham Mot. at 5-8 (Dkt. 413); Jatimothy Walker's Supp. Mot. (Dkt. 453); Jatimonthy Walker Resp. (Dkt. 499); Norwood Resp. (Dkt. 504).

In Bruton, the Supreme Court examined the effect of introducing a declarant-co-defendant's confession at trial against the declarant alone, when the confession implicates another co-defendant. The Supreme Court noted that, while limiting instructions are often a means of resolving possible evidentiary issues, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. at 135. Accordingly, the Court held that the admission at a joint trial of a non-testifying accomplice's confession that also implicates the co-defendant violates the non-declarant co-defendant's right of confrontation.

The bounds of this rule were further defined by the Supreme Court in a subsequent line of cases. In Richardson v. Marsh, 481 U.S. 200 (1987), the Supreme Court allowed the introduction of a redacted confession that, when viewed in the context of other evidence

8

introduced at trial, implicitly inculpated the co-defendant. The Court explained that, in <u>Bruton</u>, the confession "expressly implicat[ed]" the co-defendant, whereas in <u>Richardson</u>, "the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial." <u>Id.</u> at 208. The Court thus concluded that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." <u>Id.</u> at 211. In other words, under <u>Richardson</u>, <u>Bruton</u> only applies to statements that "facially incriminate[] the defendant." <u>Vasilakos</u>, 508 F.3d at 407.[4]

The Supreme Court refined the rule announced in <u>Richardson</u>, however, in <u>Gray v. Maryland</u>, 523 U.S. 185 (1998). In <u>Gray</u>, the Court found that a redaction that simply replaces the complaining-codefendant's name with an obvious indication of deletion — e.g., the word "deleted" — still falls within <u>Bruton</u>'s protection. <u>Id.</u> at 192. The Court explained that <u>Gray</u>, unlike <u>Richardson</u>, involved inferences that, "despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." <u>Id.</u> at

---

[4] Defendants claim that the rule announced in <u>Richardson</u> is no longer valid in light of <u>Crawford</u>. <u>See</u> Cunningham Br. at 4 (Dkt. 236) ("It is Defendant's position that <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) overruled <u>Richardson v. Marsh</u>, . . . by giving a defendant the absolute write [sic] to cross-examine the maker of a testimonial statement."); Oldham Mot. at 4-5 (Dkt. 413). Courts within this district have squarely addressed and rejected this argument. <u>See, e.g.</u>, <u>West</u>, 2009 WL 4043062, at *2 ("<u>Crawford</u> did not overrule <u>Bruton</u> and its progeny."); <u>Wiley v. Bell</u>, 05-70486, 2012 WL 3262858, at *5 (E.D. Mich. Aug. 9, 2012) ("<u>Crawford</u> did not abrogate the Supreme Court's prior holdings in <u>Bruton</u> or <u>Marsh</u>."). Indeed, Defendants ignore that the Sixth Circuit has continued to rely on <u>Richardson</u> and <u>Gray</u> subsequent to the Supreme Court's decision in <u>Crawford</u>. <u>See, e.g.</u>, <u>Vasilakos</u>, 508 F.3d at 407 (citing <u>Crawford</u>, <u>Bruton</u>, <u>Richardson</u>, and <u>Gray</u>). Moreover, even the case cited by Oldham — <u>United States v. Clark</u>, 717 F.3d 790, 813-817 (10th Cir. 2012) — reveals that <u>Crawford</u> did not overrule <u>Bruton</u>; rather, as Oldham recognizes, the <u>Clark</u> decision merely limits the rule announced in <u>Bruton</u> to testimonial statements. Therefore, Defendants' argument is misplaced.

196.  The Court held that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, . . . leave statements that, considered as a class, so closely resemble <u>Bruton</u>'s unredacted statements that . . . the law must require the same result."  <u>Id.</u> at 192.

The Sixth Circuit has interpreted this line of cases as permitting "the introduction of a declarant-codefendant's self-incriminating, extra-judicial statement, in a joint trial, where the defendant's name is redacted and a neutral term is substituted."  <u>Vasilakos</u>, 508 F.3d at 408. Examples of such permissible substitutions include the phrases "the person" or "another person." <u>Id.</u>  This type of redaction does not raise Confrontation Clause concerns so long as the redacted statement does not "ineluctably implicate" the non-declarant co-defendant.  <u>Id.</u>

Norwood's statement does not raise a problem under <u>Bruton</u> or its progeny.  The statement provides that "he and the others he hung out with identified themselves as the Howard Boys, aka Hot Boys, aka HB's," that he "and the others he hung out with were able to sell narcotics in the area," that "they usually sold drugs on their own, but if there was ever a problem they would protect one another," and that "the younger guys from the neighborhood now refer to themselves as Murda Ville."  <u>See</u> Norwood Statement (Dkt. 208-1).   None of these statements involves inferences regarding Defendants that "a jury ordinarily could make immediately, even were the confession the very first item introduced at trial."  <u>Gray</u>, 523 U.S. at 196; <u>see</u> <u>also</u> <u>id.</u> (suggesting that the use of "Me and a few other guys" would avoid <u>Bruton</u> issues).   The statements do not facially identify any particular Defendant, and they could not do so unless "linked with evidence introduced later at trial."  <u>Richardson</u>, 481 U.S. at 208; <u>see</u> <u>also</u> <u>Vasilakos</u>, 508 F.3d at 408 ("Because the government was prosecuting multiple defendants for participation

in an alleged conspiracy to defraud CICA, the declarant-codefendants' deposition statements did not ineluctably implicate Vasilakos or Lent.").

Norwood's reference to "the others" and the "younger guys" could just as easily apply to the non-indicted purported co-conspirators as to the Defendants. Indeed, the fact that Norwood names specific individuals — none of whom is a trial Defendant — when discussing people he "associated with" undermines any contention that his use of the phrases "the others" or "younger guys" leads to the natural conclusion that he was referring to co-Defendants. See United States v. West, No. 06-20185, 2009 WL 4043062, at *2-3 (E.D. Mich. Nov. 20, 2009) (statement that declarant was part of group of individuals did not lead to "natural conclusion" that group was composed of co-defendants).

Jonathan Walker's statements in his 2011 proffer, on the other hand, could implicate Bruton concerns. Among other things, Walker expressly identifies (i) Johnathan Oldham, Gills, and Norwood as sellers of crack cocaine in Howard Estates, (ii) Jatimothy Walker as the shooter of Marion Hardy, (iii) Oldham as the shooter of Efrem Anderson, and (iv) Norwood as present at the shooting of Matthew Oldham (brother of Jonathan Oldham). See Walker Proffer Statement (Dkt. 499-2). These statements thus facially incriminate Jonathan Walker's co-Defendants, and, even if introduced solely against Jonathan Walker, they could raise Bruton concerns for these co-Defendants.

However, the Government has proposed redactions to these statements that the Court believes would resolve the Bruton issues. For example, the Government intends to entirely omit the names of individuals Jonathan Walker identified as people who grew up in Howard Estates and who sold crack cocaine. Gov't Supp. Br. at 7 (Dkt. 505); Gov't Resp. at 2-3 (Dkt. 516); Gov't Resp. (Dkt. 577). The Government also has agreed to state only that Jonathan Walker said

he saw Charles Orr walking with "another," rather than naming Norwood, when Matthew Oldham was shot. Id. Similarly, with respect to the statements identifying Jatimothy Walker and Oldham as participants in other shootings, the Government originally proposed replacing their names with "another person" or "guy," Gov't Supp. Br. at 7-10; Gov't Resp. at 2-3 (Dkt. 516), but has since proposed even further redactions, eliminating some of the references to another individual entirely by changing references to the shootings to the passive voice. Gov't Resp. (Dkt. 577). This is precisely the type of redaction approved by the Sixth Circuit in Vasilakos.

Moreover, these statements, as redacted, are not the type of statements that clearly suggest that the implied reference to a shooter correspond to a specific Defendant, as opposed to other individuals. See United States v. Stinson, No. 12-00012, 2013 WL 4499013, at *3 (W.D. Ky. Aug. 20, 2013) ("No reasonable juror could hear the proposed redacted statement without inferring that Defendant Stinson's name had been omitted."); Stanford v. Parker, 266 F.3d 442, 456-457 (6th Cir. 2001) (replacement of co-defendant's name with "the other person" still violated Bruton where the substitution "would not have prevented the jury from drawing the natural conclusion that the 'other person' and [co-defendant] were indeed one and the same); United States v. Macias, 387 F.3d 509, 519 (6th Cir. 2004) (Bruton issue still existed where, "[a]lthough the statement did not name [co-defendant] directly, the description of subject two was sufficiently specific that it could have referred only to [co-defendant]"). But see West, 2009 WL 2591440, at *3 (noting that "Vasilakos decided the same issue as Stanford, but reached a different result") vacated in part on other grounds by 2009 WL 2923242 (E.D. Mich. Sept. 10, 2009).

The use of neutral pronouns and the passive voice in Jonathan Walker's statements eliminates the risk that the jury will believe Jonathan Walker was referring to Jatimothy Walker or Oldham; there is nothing in the statements, as redacted, "ineluctably implicat[ing]" these individuals. See Vasilakos, 508 F.3d at 408 ("Because the government was prosecuting multiple defendants for participation in an alleged conspiracy . . ., the declarant-codefendants' [redacted] statements did not ineluctably implicate [specific co-defendants].")); see also United States v. Mendez, 303 F. App'x 323, 327 (6th Cir. 2008) (no Bruton issue where statement referenced "the five people" involved in a kidnapping, even though five defendants were tried together, because district court immediately gave limiting instruction); United States v. Sherlin, 67 F.3d 1208, 1215-1216 (6th Cir. 1995) (no Bruton issue in joint trial for conspiracy to commit arson where declarant said he was the "lookout," even though this suggested others were involved); United States v. Winston, 55 F. App'x 289, 295 (6th Cir. 2003) (no Bruton issue when statement, as read, mentioned "another individual" because "[t]he 'other individual' that Deland referred to in his testimony was never mentioned again during his testimony. [The declarant's] statements did not compel an inference by the jury that [the co-defendant] was 'the other individual.' The jury learned only that [the declarant] entered the house and another person accompanied him. The jury did not learn whether [the co-defendant] was [the declarant's] companion or whether [the co-defendant] was involved in the murder."). Accordingly, this is not a case where the statements, "despite redaction, . . . involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." Gray, 523 U.S. at 196; see also Lang v. Gundy, 399 F. App'x 969, 976 (6th Cir. 2010) ("If the court redacts all references to the defendant, so that the confession does not expressly implicate the defendant as

an accomplice to the crime, the confession is admissible against the codefendant, and remains so even if defendant is linked to the confession by independent evidence.").[5]

Jatimothy Walker and Oldham claim that, even in redacted form, Jonathan Walker's statements clearly identify them as the shooters when paired with the indictment.  Jatimothy Walker Supp. Mem. (Dkt. 554); Oldham Supp. Mem. (Dkt. 563).[6]  They argue that, given that the indictment charges them with these crimes, the jury will infer that Jonathan Walker must have been referring to them.  Id.  The Court does not agree.

_____

[5] The Court does note that, in the redactions proposed by the Government (Dkt. 577), the Government intends to refer to Jonathan Walker as "WALKER," except with respect to the shooting of Marion Hardy, where it intends to refer to him as "JONATHAN."  Given that this change in language may result in troublesome inferences by the jury regarding Jatimothy Walker, the Court requires that Jonathan Walker be referred to as "JONATHAN" in any testimony regarding the April 2011 proffer session, even if it is not about the Marion Hardy murder.

  Moreover, Jonathan Walker has objected to the Government's proposed redactions regarding the shooting of Efram Anderson.  See Request Regarding Proposed Redactions (Dkt. 578).  In particular, he objects to the Government's proposed redactions of the fourth and fifth paragraphs of that statement.  The Court denies Jonathan Walker's request to change the fourth paragraph from the passive to active voice; although Jonathan Walker claims that the redacted statement "ignores that [he] actually saw another human being firing the gun that caused the person to fall," the statement clearly sets forth that Jonathan Walker "observed an unknown male black subject get shot and fall to the ground."  The use of the passive voice does not change the fact that the statement indicates Jonathan Walker saw the shooting.  However, the Court will add the phrase "by someone" following "get shot" to clarify that Jonathan Walker disavowed being the shooter.

  As for the fifth paragraph, the Court agrees that the use of "a guy" and the singular "him" is misleading.  Accordingly, the Government shall modify the statement as follows: "A couple days later he ran into the shooter at a party store on 12th Street.  The shooter advised him to get rid of his royal blue Detroit Tigers baseball cap because they caught them on camera the night of the shooting."

[6] Jatimothy Walker's counsel indicated at the May 12, 2014 Final Pretrial Conference that he had no "problem" with the supplemental redacted statement filed by the Government on May 7, 2014 (Dkt. 564).  In light of the fact that counsel did not expressly withdraw the objection, however, the Court considers, out of an abundance of caution, whether the Government's proposed redactions regarding the shooting of Marion Hardy alleviate any Bruton concerns as to Jatimothy Walker.

The Government claims that Jonathan Walker's statements are relevant and admissible against him to show that he was present for the shootings of Hardy and Anderson. As redacted, the statements indicate that Jonathan Walker was present for the shootings, that another individual did the shootings, and that Jonathan Walker denied being part of the shootings. Just because the indictment names Jatimothy Walker and Oldham as the shooters does not mean that Jonathan Walker's statement "ineluctably implicate[s]" them; to the contrary, the jury could just as easily conclude that Jonathan Walker was referring to any of the other co-Defendants or another unindicted individual, and the Government simply did not believe this version of events.

This point is highlighted with respect to Jonathan Walker's statement about the shooting of Marion Hardy. Clearly, the Government did not believe Jonathan Walker's claim that he was not involved with the shooting, as it charged both him and Jatimothy Walker with the murder. Therefore, despite Jatimothy Walker's claim that the jury will inevitably conclude Jonathan Walker identified him as the shooter based on the indictment, the jury could just as reasonably make the opposite inference — i.e., that Jonathan Walker named an individual <u>other</u> than Jatimothy Walker, but the Government did not believe him on this point either. And if the Government did not believe Jonathan Walker with respect to the Hardy shooting, the jury could just as easily infer that Jonathan Walker identified someone other than Oldham as the shooter of Anderson, but the Government was not convinced.

Therefore, the statements' introduction, as redacted, does not require severance, even though Jatimothy Walker and Oldham are charged with the murders discussed in Jonathan Walker's statement. See <u>United States v. Oliver</u>, 513 F. App'x 311, 313-314 (4th Cir. 2013) (no <u>Bruton</u> issue in joint trial of two defendants for conspiracy to commit robbery, where defendant's statement was redacted to replace co-defendant's name with "the driver," even though both

individuals were charged with the crime); <u>Winston</u>, 55 F. App'x at 295 (no <u>Bruton</u> issue where two defendants were charged with carrying and using a firearm in relation to a drug-trafficking crime to commit murder, and one of the defendants made a statement about the other defendant's involvement, which was redacted to "another subject") .

Norwood identifies various other portions of Jonathan Walker's statement that he believes raises Confrontation Clause concerns. Norwood Resp. at 2-3 (Dkt. 504). Norwood admits that "[t]here is no reference to Defendant Norwood by name" in these statements; but he claims that the conduct described in these statements is "part of the Government's theory that" these acts were "evidence of the existence of the same RICO enterprise in which Defendant Norwood is charged as a defendant." <u>Id.</u> However, as the Government highlights, these statements will only be admitted against Jonathan Walker, and even Norwood acknowledges that the statements do not facially inculpate him. Gov't Resp. at 3 (Dkt. 516); Norwood Mot. at 2-3. As such, they do not raise Confrontation Clause concerns under <u>Bruton</u>, <u>Richardson</u>, <u>Gray</u>, and <u>Vasilakos</u>. <u>See</u> <u>Winston</u>, 55 F. App'x at 295.[7]

Accordingly, introduction of the redacted statements against the declarant-Defendants alone will not violate the remaining Defendants' confrontation rights. Severance is, therefore, not required based on the statements.

---

[7] While not directly relevant to the severance determination, counsel for Jonathan Walker suggested at the May 1, 2014 Final Pretrial Conference that, depending on the redactions, he may seek to introduce other parts of the statements based on the doctrine of completeness. Although the Court cannot rule on the merits of this argument without having more information regarding what, specifically, Jonathan Walker would propose to introduce, the Court notes that the Sixth Circuit has taken a limited view toward the completeness doctrine: "Rule 106 covers an order of proof problem; it is not designed to make something admissible that should be excluded. . . . Exculpatory hearsay may not come in solely on the basis of completeness." <u>United States v. Adams</u>, 722 F.3d 788, 826 (6th Cir. 2013); <u>United States v. Holden</u>, 557 F.3d 698, 706-707 (6th Cir. 2009) (defendant could not introduce statements under completeness doctrine — even though part of statement was introduced as party admission by opponent — because the statements were inadmissible hearsay when introduced by defendant; the court also rejected defendant's argument that this ruling purportedly compelled him to take the stand).

### B. "Spill-Over" Evidence

Defendants next raise a variety of arguments as to why the potential "spillover" of evidence to be introduced at trial requires severance. The Court addresses each argument below, and finds that they all lack merit.

### 1. Standard

Federal Rule of Criminal Procedure 8(b) permits the joinder of defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Under that rule, "[a]ll defendants need not be charged in each count."

Defendants do not contest that joinder in the indictment was proper under Federal Criminal Rule 8(b). Rather, they assert that severance of that joinder for trial is proper under Federal Rule of Criminal Procedure 14(a): "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

The standard for severance under Rule 14 is very stringent. The Sixth Circuit has noted that "[a]s a general rule, persons jointly indicted should be tried together." United States v. Causey, 834 F.2d 1277, 1287 (6th Cir. 1987). "This is particularly true in cases involving conspiracy or joint participation in a common scheme; where the charges are to be proven by the same evidence, resulting from the same series of acts, there is a strong policy in factor of joint trials." United States v. Weiner, 762 F. Supp. 712, 713 (E.D. Mich. 1991). The Supreme Court similarly has held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

The Supreme Court and Sixth Circuit also have admonished that, even "where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" Driver, 535 F.3d at 427 (quoting Zafiro, 506 U.S. at 534). To that end, "[a] request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." Causey, 834 F.2d at 1287. The Sixth Circuit has further explained that

> a defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. . . . [I]n a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of evidence relating to each defendant. However, we adhere to the view, as previously stated by our court, that the jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately. The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases.

Id. at 1288 (quotation marks and citations omitted).

### 2. Gills' Argument

Gills first argues that his trial should be severed from that of his co-Defendants because, while those individuals "identified themselves as Howard Boys a/k/a Hot Boys a/k/a HBs," Gills "associated himself with a record label known as 'Murda Ville/HB entertainment,' a nascent recorded and live music production [company] that had no affiliation with the alleged enterprise referenced by Co-Defendant Norwood." Gills Mot. at 2 (Dkt. 229). Gills argues that Norwood's statement discussed above will be used to establish an enterprise of which he was not a part: "Mr. Gills[] is in a unique position among his Co-Defendants in the sense that, whereas he does not dispute that he is a 'younger guy from the neighborhood [who refers to himself] as "Murda

Ville," . . . his self-identification as such identifies him as a 'rap singer' and a music artist, and does not identify him as a member of any criminal enterprise conspiracy." See Gills Br. at 5-6, 9 (brackets and emphasis in original); Gills Supp. Br. at 6-7 (Dkt. 401) ("Mr. Gills' defense to Count I of the First Superseding Indictment is literally unique from the defenses that are expected to be mounted by his trial Co-Defendants.").

The Court rejects this argument for two reasons. First, as explained above, Norwood's statement will only be admitted against him, and the Court intends to give a limiting instruction to that effect. Any concerns that the jury will inappropriately use the statement to establish the existence of the enterprise against Norwood's co-Defendants is diminished by the fact that the Government has expressly stated that it does not intend to use the statement to establish the purported enterprise. See Gov't Supp. Br. at 1 n.1 (Dkt. 484). While Gills claims that severance is required because he will not have the opportunity to cross-examine Norwood — and potentially any agents testifying about Norwood's statements — because they are not being introduced against him, see Gills Br. at 11, Gills fails to explain how this result is different from what occurs in any other joint conspiracy trial. And district courts and the Sixth Circuit regularly approve joint trials in conspiracy cases. See, e.g., Driver, 535 F.3d at 427; United States v. Farhart, No. 04-80370, 2006 WL 1108929, at *2-3 (E.D. Mich. Apr. 25, 2006) (rejecting severance argument in RICO conspiracy case); Vasilakos, 508 F.3d at 408.

Second, Gills' argument that he should be severed because he has a "unique" defense that he was not a member of the "Hot Boys," but rather was simply affiliated with a record label, is not a basis for severance. Of course, Gills is free to present this defense to the jury; but to ask the Court to determine, in essence, the merits of this defense in making a severance determination is unwarranted. See United States v. Ruibal, No. 12-132, 2013 WL 3967145, at

*2 (W.D. Mich. Aug. 1, 2013) ("Courts have repeatedly rejected severance requests in RICO cases based on claims of . . . 'guilt by association.'").

### 3. Jonathan Walker's Argument

Next, Jonathan Walker argues that his trial should be severed from his co-Defendants' because of their tattoos. In particular, Jonathan Walker claims that each of the other Defendants has "tattoos that define their 'association' with, or 'membership' in the [e]nterprise as defined in the [i]ndictment," whereas Jonathan Walker "does not have these types of tattoos." Jonathan Walker Mot. at 2 (Dkt. 230). Jonathan Walker claims that the spillover effect of this "self-labeling" by his co-Defendants will be prejudicial against him.

The Court rejects this argument for two reasons. First, Jonathan Walker has not shown the requisite prejudice resulting from his co-Defendants' tattoos. Indeed, as the Government highlights, the jury could consider Jonathan Walker's lack of tattoos as evidence of non-participation in the purported enterprise. Gov't Resp. at 11 (Dkt. 277).

Furthermore, to the extent Jonathan Walker claims a broad possible "guilt by association" arising out of his co-Defendants' tattoos, this is insufficient. United States v. Neace, No. 07-20400, 2008 WL 1735373, at *3 (E.D. Mich. Apr. 14, 2008) (denying severance where request was based on conclusory allegations of possible guilt by association). Such a claim turns in part on whether "the number[] of conspiracies and conspirators involved were too great for the jury to give each defendant the separate and individual consideration of the evidence against him to which he was entitled." United States v. Gallo, 763 F.2d 1504, 1526 (6th Cir. 1985) (quoting United States v. Tolliver, 541 F.2d 958, 962 (2d Cir. 1976)). The Court concludes that twelve indicted co-defendants, with six going to trial, and one alleged common RICO conspiracy is insufficient to raise a possibility of "guilt transference." Id. (rejecting guilt-by-association

20

argument in case involving seven indicted co-defendants, with five going to trial); <u>United States v. Seale</u>, 947 F.2d 946 (Table), at *5 (6th Cir. 1991) (same with respect to eleven tried co-defendants and one conspiracy). This is particularly true given that the evidence in question — tattoos on co-Defendants' bodies — is clearly attributable to the tattooed Defendant, and can be easily compartmentalized by a jury if so ordered. <u>See</u> <u>Driver</u>, 535 F.3d at 427 ("Indeed, a request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." (quoting <u>Causey</u>, 834 F.2d at 1287)).[8]

Jonathan Walker's cited authority is inapposite. In <u>United States v. Breinig</u>, 70 F.3d 850 (6th Cir. 1995), a former husband and wife were tried together for willfully attempting to evade and defeat federal income taxes. The husband claimed that his defense would be "violently antagonistic" to his former wife's, including the defense that he had no knowledge of the underreporting because his wife kept all the books. His wife, in turn, claimed that she could not endure sitting through trial with her husband "without breaking down," that she claimed that her husband had controlled her, and that he had been unfaithful and abandoned their children — thereby suggesting bad character. <u>Id.</u> at 851-852. The Sixth Circuit concluded the former-couple's trials should have been severed because the evidence about the husband was "impermissible and highly inflammatory evidence of his bad character." <u>Id.</u> at 853. The court noted that "[t]he jury was told, by well-credentialed experts, that [the husband] was an adulterous, mentally abusive, and manipulating spouse. . . . Because [the husband's] credibility was in issue, the jury's consideration of categorically inadmissible evidence was manifestly prejudicial." <u>Id.</u>

---

[8] Jonathan Walker also claims that severance is required because the "tattoo-based evidence would not be admitted in a trial against Jonathan Walker were he tried alone." Jonathan Walker Br. at 5 (Dkt. 230). This is clearly insufficient to warrant severance, as described below. <u>See</u> <u>United States v. Warner</u>, 971 F.2d 1189, 1196 (6th Cir. 1992) ("[S]everance is not required [even] if some evidence is admissible against some defendants and not against others").

This case presents no such scenario.  The fact that Jonathan Walker lacks tattoos, whereas his co-Defendants have them, is not so manifestly prejudicial as to warrant severance.  There is simply no evidence at this time that the jury would be unable to categorize the evidence against Jonathan Walker, versus his co-Defendants, if necessary.   Indeed, the Sixth Circuit noted in Breinig that that case "is an exceptional case" and that "its unique facts present one of those very few instances where a conviction is reversed based on a denial of severance under Rule 14."  Id. The court further noted that its decision was based on "reviewing the record and evaluating the trial after all the testimony ha[d] been presented," most of which the district court could not have foreseen.  Id.  Accordingly, the Court finds that the Breinig decision is not helpful to Jonathan Walker.

As for United States v. Davidson, 936 F.2d 856 (6th Cir. 1991), that case concerned a ten-count indictment in which the defendant was charged with only one count.  The majority of the counts concerned filing false income tax returns and evading tax obligations.  Id. at 857.  The defendant, however, was charged with only one count: conspiring to possess with intent to distribute heroin and cocaine.  Id.  The Sixth Circuit, in ruling on challenges to joinder under Rule 8 and failure to sever under Rule 14, noted that the case concerned many charges "unrelated to the conspiracy charge" against the defendant, that the co-defendant was absent from trial, and that the absent co-defendant was charged with all of the counts, whereas the defendant was only charged with one.  The court also noted that the introduction of certain evidence against the absent co-defendant on the tax charges was prejudicial to the complaining defendant given that it was suggestive and would not have been admissible against the complaining defendant in separate trials.  The court thus concluded that the defendant suffered prejudice from the district court's failure to sever "the unrelated tax charges against" the absent co-defendant.  Id. at 861.

Here, the central charge in the indictment — RICO conspiracy — is brought against all of the Defendants, including Jonathan Walker.  Moreover, Jonathan Walker does not seek severance based on the existence of the other counts in the indictment against individual co-Defendants; rather, his claim is based on his co-Defendants' tattoos.  Lastly, as noted by the dissent in Davidson, it appears that the majority in that case was "influenced to a good extent" by the co-defendant's absence; such a circumstance is not present in this case.  Therefore, Davidson is not helpful to Jonathan Walker's motion in light of the particular facts of that case and the more-recent Sixth Circuit authority describing the substantial hurdle Defendant must overcome.

### 4. Cunningham's Argument

Next, former defendant Cunningham — joined by Norwood and Oldham — argues that severance is appropriate because certain evidence admissible against other co-Defendants — such as "autopsy photographs" — would not be admissible against Cunningham if he was tried separately.  Cunningham Mot. at 2 (Dkt. 236).[9]  This one-paragraph argument by Cunningham provides no specific information about the purported prejudice, or even a detailed description of the evidence at issue.  Instead, Cunningham conclusorily claims that "this is one of those rare cases where Defendant will be so substantially and unfairly prejudiced by the spillover effect of the evidence to be admitted against the co-defendants who are charged with murder in aid of racketeering that he will be denied a fair trial."  Cunningham Br. at 6.

---

[9] Norwood has specified that he joins in Cunningham's motion only as to this argument.  See Notice of Joinder (Dkt. 261).  Oldham has not so specified; nevertheless, the Court interprets Oldham's joinder as being limited to this argument and as to the argument regarding Defendant Norwood's statements.  The remaining arguments — regarding statements made in which Cunningham was named — do not appear to apply to Oldham.  Indeed, the Court notes that Oldham did not file a supplemental brief regarding these statements following the Court's order on Confrontation Clause issues; accordingly, the Court deems any arguments about these statements to have been abandoned.  See supra note 2.

The Court concludes that this unsupported argument fails to meet the high bar required for severance. It is clear that conclusory or generalized allegations of prejudice — such as that contained in Cunningham's motion — are insufficient. See Zafiro, 506 U.S. at 539; Driver, 535 F.3d at 427; United States v. Willis, 232 F. App'x 527, 533 (6th Cir. 2007); United States v. Nagi, 541 F. App'x 556, 566 (6th Cir. 2013). Moreover, the Sixth Circuit has repeatedly stated that "severance is not required [even] if some evidence is admissible against some defendants and not against others." United States v. Warner, 971 F.2d 1189, 1196 (6th Cir. 1992); Gallo, 763 F.2d at 1525 ("Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged), does not, in and of itself, show substantial prejudice in the latter's trial."). Lastly, the evidence may be admissible to show acts in furtherance of the enterprise, even if the evidence relates to an act not alleged to have been committed by the individual against whom the evidence is introduced. See United States v. Hohn, 293 F. App'x 395, 402 (6th Cir. 2008). The Court, therefore, rejects Cunningham's argument.

### 5. Oldham's Argument

Lastly, Oldham argues that severance is required because Leon Gills recently posted rap recordings from a Facebook page that relate to Oldham. In particular, Oldham claims that the Government's "interpretation of these posts will be that Gills was praising Oldham for going to trial and that it tends to prove Oldham's continuing participation in the enterprise." Oldham Supp. Br. at 1-2 (Dkt. 507). To the extent these statements are admissible against Oldham — a question the Court does not and need not decide here — Oldham fails to explain why their introduction requires severance. The fact that evidence may be harmful to Oldham is not grounds for severance, and Oldham fails to explain how the statements are testimonial, as

required to raise Confrontation Clause concerns.  See Fed. R. Evid. 801(d)(2)(E); see also United States v. Damra, 621 F.3d 474, 492 n.4 (6th Cir. 2010) (noting that the Confrontation Clause only applies to "testimonial" statements).   To the extent the statements are introduced against Gills alone, the Court presumes the jury is capable of following limiting instructions.  See Zafiro, 506 U.S. at 539.

Therefore, the Court concludes that any risk of "spill-over" is not so prejudicial as to overcome the general rule against severing defendants who were indicted together.

### C.  Antagonistic Defenses

Defendants lastly claim that severance is required because they anticipate that their defenses will be mutually antagonistic to some or all of their co-Defendants' defenses.  See Gills Supp. Br. at 4-6 (Dkt. 401); Oldham Br. at 8-11 (Dkt. 413); Oldham Supp. Br. (Dkt. 507).

"Antagonistic defenses arise when one person's claim of innocence is predicated solely on the guilt of a co-defendant."  United States v. Harris, 9 F.3d 493, 501 (6th Cir. 1993).  The standard for severing based on possibly antagonistic defenses is very high:

> Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately.  Neither does a difference in trial strategies mandate separate trials.  The burden is on defendants to show that an antagonistic defense would present a conflict so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.

Warner, 971 F.2d at 1196 (internal quotation marks and citations omitted).  In other words, "'mutually antagonistic defenses are not prejudicial per se' and Fed. R. Crim. P. 14 does not require severance even if some prejudice is shown."  United States v. Carpenter, No. 12-20218, 2014 WL 943094, at *2 (E.D. Mich. Mar. 11, 2014) (quoting Zafiro, 506 U.S. at 538-539).  "The mere fact that each defendant 'points the finger' at the other is insufficient;" the defendant must

25

show that the antagonism will likely mislead or confuse the jury.  United States v. Horton, 847 F.2d 313, 317 (6th Cir. 1988); see also United States v. Dhaliwal, 464 F. App'x 498, 509-510 (6th Cir. 2012) ("[T]he attempt of one defendant to save himself by inculpating another defendant does not require that the defendants be tried separately.").

Oldham argues that his trial strategy is going to be mutually antagonistic to Norwood with respect to the murder of Oldham's brother.  See Def. Oldham Br. at 8.  Oldham claims that he wants to introduce evidence of Norwood's complicity in his brother's murder to show that Oldham would not have conspired with Norwood; on the other hand, Norwood wants to exclude the evidence of his involvement in Matthew Oldham's murder.  Id.  Oldham claims that failing to sever will deny him his right to introduce this evidence, which he could have introduced in his own trial.  Id.  However, the Court recently denied without prejudice Norwood's request to exclude this evidence, so this evidence may be admissible at trial, thus making this issue potentially moot.

Moreover, even if evidence regarding whether Norwood was complicit in the murder ultimately is not admissible, the Court notes that the evidence's relevancy to Oldham's theory is questionable, even in tried separately.  While Oldham claims the evidence is relevant to show that he would not have conspired with Norwood, evidence that Norwood actually did or did not commit the murder is irrelevant to Oldham's theory.  What may be relevant is whether Oldham thought that Norwood committed this crime, even if such thinking was incorrect.  And the introduction of evidence concerning what Oldham thought — irrespective of the accuracy of that thinking — is different than evidence concerning whether Norwood actually did or did not commit the crime.  Such evidence may be independently admissible at trial by Oldham,

regardless of whether the Court ultimately excludes evidence concerning whether Norwood actually committed the crime. Accordingly, severance is not required on this basis.

Oldham also claims that his defenses are antagonistic to Jonathan Walker and Gills because he believes those individuals committed two other murders with which he is charged. Id. at 9. In support of this argument, Oldham provides statements that the Government has disclosed indicating that these other individuals participated in the shootings. See Oldham Supp. Br. at 2-3 (Dkt. 507). Similarly, Gills argues that severance is required because he believes Oldham committed the murder for which Oldham is now accusing him. Gills Supp. Br. at 4-6.

The Court finds the decision in Lang v. Gundy, 399 F. App'x 969 (6th Cir. 2010), helpful to resolution of this issue. In that case, the petitioner argued that the defense strategies of his codefendants caused him substantial prejudice because "his codefendants[] placed all of the blame on him, asserting mutually antagonistic defenses." Id. at 976. The petitioner thus argued that the trial court should have severed his case from his co-defendants. Id. The Sixth Circuit disagreed, noting that the appropriate standard is whether "a joint trial poses a serious risk to a specific trial right of the defendant." Id. The court noted that the petitioner had failed to make such a showing because "general antagonism between defendants does not suffice." Id.

Similarly here, Defendants rely on possible "finger pointing" as a ground for severance, but this alone is insufficient.[10] Defendants have not identified any specific trial right violated by their joinder in light of their purportedly antagonistic defenses, nor have they sufficiently shown how their joinder will result in substantial jury confusion. This is particularly true if a proper

---

[10] Gills argues that, absent severance, he will "be effectively deprived of any meaningful opportunity to challenge Mr. Oldham's attorney's 'finger pointing' at Mr. Gills" because Oldham is unlikely to testify at trial. Gills does not explain why — despite Oldham's right to not testify — his attorney could not similarly introduce evidence and make arguments undermining Oldham's counsel's "finger pointing."

instruction is given that (i) the potential guilt of one Defendant does not mandate the guilt of other Defendants; (ii) that guilt is individual; and (iii) that the jury may find a Defendant guilty based only on the evidence presented as to that Defendant.  See United States v. Turner, 860 F. Supp. 1216, 1221 (E.D. Mich. 1994); see also Zafiro, 506 U.S. at 540-5411 (noting that, even in cases where defendants accuse each other, any prejudice typically can be resolved with an instruction that the jury must "give separate consideration to each individual defendant and to each separate charge against him," and that each defendant "is entitled to have his or her own case determined from his or her own conduct and from the evidence that may be applicable to him or her").

The Court further notes that this case presents a different situation than those in which courts have severed.  Here, for each of the actions objected to by Defendants as raising antagonistic defenses, only the objecting Defendant has been charged with the specific crime. Cf. Breing, 70 F.3d at 850 (both defendants charged with the same counts).[11]  For example, while Oldham claims his defenses are mutually antagonistic to Jonathan Walker and Leon Gills because he believes those individuals committed the crimes for which he is charged, only Oldham is actually subject to possible conviction on the murder and attempted murder counts for those killings.  See Am. First Superseding Indictment at Counts 10, 11, 39, and 40 (Dkt. 191).  In other words, even if he points the finger at Jonathan Walker or Gills, those individuals cannot be found guilty of the specific counts regarding those murders at this trial — only Oldham can. Therefore, any such finger pointing is not a zero-sum game, where the jury may get confused and feel that it must hold one of the "pointers" accountable by finding him guilty of the charged offense.  See Horton, 847 F.2d at 317; United States v. Smith, 197 F.3d 225, 230 (6th Cir. 1999)

---

[11] Notably, Jatimothy Walker and Jonathan Walker did not seek severance from each other based on purportedly antagonistic defenses, even though they are charged with the same count of attempted murder in aid of racketeering.

("The fact that each defendant attempts to lay the blame at the feet of the other defendants is not reason enough for a severance without a showing that the jury is unable to treat evidence applicable to each defendant distinctively.").  Defendants have not met their burden of showing that the purportedly antagonistic defenses are likely to mislead or confuse the jury.

Accordingly, the Court denies Defendants' request for severance based on possibly antagonistic defenses at trial.

## III. CONCLUSION

For the reasons discussed above, the Court denies Defendants' motions to sever trial (Dkts. 208, 229, 230, 236, 413, 453, 478).

SO ORDERED.

Dated:  May 15, 2014                                    s/Mark A. Goldsmith
      Flint, Michigan                                MARK A. GOLDSMITH
                                       United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 15, 2014.

                                       s/Deborah J. Goltz
                                       DEBORAH J. GOLTZ
                                       Case Manager