UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                            Case No. 12-CR-20287

v.

                                            HON. MARK A. GOLDSMITH

ALEXANDRA NORWOOD, et al.,

        Defendants.
_____/

## MEMORANDUM OPINION REGARDING JURY INSTRUCTIONS

### I. INTRODUCTION

Before the Court are the proposed jury instructions submitted by the parties, the Government's first and second objections (Dkts. 673 and 684), and Defendants' first and second responses (Dkts. 679 and 692). Generally, the parties agreed to the most of the instructions. There was, however, some disagreement, particularly the parties' positions concerning the instructions for Count I — the RICO-conspiracy charge. After due consideration of the papers and oral argument held on July 16, 2014, the Court thereafter instructed the jury in accordance with the rulings contained in this Opinion.

### II. ANALYSIS

1. The Preliminary Instructions

The Court addressed Defendants' objection that the preliminary instructions — that the parties drafted and agreed should be read to the jury before it heard any proofs — should not be controlling because the facts of this case differ from the facts of United States v. Kilpatrick, No. 10-20403 (E.D. Mich.). Def. 1st Resp. at 4 (Dkt. 679); Def. 2d Resp. at 2-3 (Dkt. 692). In making this objection, Defendants argued that, after the Government had presented its evidence,

this case was "worlds away" from the evidence in Kilpatrick, which involved "economic duress." Def. 2d Resp. at 2. The Government noted that the preliminary instructions were modeled on the Kilpatrick instructions. Govt. 2d Objs. at 2.

Defendants' argument was not well-taken and the Court overruled the objection. The proofs at trial tracked substantially the gist of the indictment, issued in May 2012, i.e. that Defendants were members of a criminal organization that committed acts of violence to protect its exclusive right to traffic in drugs within a defined territory. To claim, over two years later, that the nature of the case only become apparent was not credible.

Furthermore, the Court noted that Defendants agreed to the preliminary instructions, as reflected in the parties' joint memorandum submitting them. See Mem. at 2 (Dkt. 589) ("The defendants have submitted the attached proposed preliminary jury instructions regarding RICO. The defendants take the position that these instructions should be given to the jury unchanged."). Although the preliminary instructions were not immutable, they were an accurate statement of the law, to which Defendants stipulated. The Court was not inclined to deviate from them drastically without good cause.

2. Elements of RICO conspiracy

The parties submitted instructions that address the elements of RICO conspiracy. While the Government's instructions, for the most part, tracked the preliminary instructions by setting forth five elements, Defendants' instructions deviated from the preliminary instructions by listing four elements. In support of changing the instructions, Defendants cited to the Seventh Circuit pattern instructions, which combine participation in an enterprise with engaging in a pattern of racketeering. Defendants also included a definition of conspiracy in their instructions.

Upon reviewing the case law, the Court concluded that the five-element format initially agreed to by the parties was the clearer approach. By making the element of a defendant's participation in an enterprise distinct from the element of engaging in a pattern of racketeering, the Court determined that the jury will more clearly understand these separate parts of the statute. Furthermore, the Court agreed with the Government that Defendants' inclusion of a definition of conspiracy from the general conspiracy to defraud the Government statute is not an accurate statement of the law, where the RICO statute has a more specific definition of the elements of the offense.

In so ruling, the Court revised the instructions slightly on page 23 of the Government's instructions so that they accurately reflect the law. First, the Court replaced "association of persons" with "enterprise" in line four, as "association of persons" is not found in the RICO statute, but "enterprise" is. See 18 U.S.C. § 1961(4). Second, the Court added "conduct" to element three, so that the pertinent line read: "The defendant knowingly agreed to conduct or participate . . ." because this reflects the language of section 1962(c).

### 3. Enterprise (association-in-fact)

The parties submitted instructions that deviated from the preliminary instructions on the element of enterprise. Both the Government's and Defendants' versions tracked the language of Boyle v. United States, 556 U.S. 938 (2009). The main difference was that Defendants' version omitted Boyle's discussion regarding what does and does not constitute an enterprise, e.g. that an enterprise may exist even if a group had no hierarchical structure or chain of command. Defendants argued that the Court should not instruct the jury on what does not constitute an enterprise because the language in Boyle is a legal discussion not useful to the jury. Def. 2d Resp. at 4 (Dkt. 692).

Defendants further objected to the use of "Howard Boys" in reference to the enterprise element because the "Howard Boys enterprise is an allegation which the Government has the burden to prove." Def. 1st Resp. at 4 (Dkt. 679).

The parties also disagreed on whether to use "purpose" or "common purpose" as part of the definition of enterprise. Govt. 2d Objs. at 3 (Dkt. 684); Def. 2d Resp. at 4 (Dkt. 692).

The Court overruled Defendants' objection concerning the language in the instructions drawn from Boyle. In order to instruct the jury on the legal definition of "enterprise" under RICO, the Court concluded that the language of Boyle was appropriate. There is no more definitive expositor of the law of the United States than the Supreme Court, and the language of Boyle is neither technical nor jargon-filled; it is eminently accessible to lay people.

The Court also overruled Defendants' objection to the instructions' reference to the "Howard Boys enterprise." The Government alleged that the Howard Boys enterprise existed and the jury should be instructed as to find that particular enterprise.

In using the Government's instructions on enterprise, however, the Court made a few further revisions. First, the Court noted that Boyle and the Government's instructions both referred to "common purpose." Therefore, the Court used "common purpose" throughout the discussion of the enterprise element.

Second, the Court revised the first line of the second paragraph on page 25 by adding "in fact" to "associate," so that the sentence more closely hewed to the definition of "enterprise" in the RICO statute. See 18 U.S.C. § 1961(4) (defining "enterprise" as including any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (emphasis added)). As revised, the sentence reads:

4

"An 'enterprise' is any group of individuals who associate in fact with each other for a common purpose."

Lastly, the Court deleted the citation to Boyle on page 25, as this was unnecessary for the jury.

### 4. Associated with the Enterprise

With respect to the second element — "associated with the enterprise" — the parties had no disagreement regarding this element in the preliminary instructions. The Government's proposed instructions had no changes. However, the Defendants' proposed instructions moved this definition as a part of their second element, "To conspire to participate and conduct." Defs.' Instructions at 5-7.

After comparing the instructions, the Court rejected Defendants' instructions and used the Government's instructions. The Court found Defendants' instructions to be unclear and requiring extensive revisions to clarify internal inconsistencies. For instance, page two of Defendants' instructions provided that the second element as: "[T]he defendant was associated with the enterprise." Id. at 2. However, on page five, Defendants listed the element as: "Element Two: Conspire to Participate and Conduct."

In using the Government's version, the Court revised it slightly. The Court deleted from the paragraph two phrases: "often in a loose partnership" and "or he conducts business with or through the enterprise." The Court found that the former phrase was vague, and that the latter phrase was inaccurate, because there is nothing criminal in doing business with a criminal enterprise to the extent there is no intent to further its mission.

Furthermore, Defendants wanted language reflecting that a defendant's mere presence in an area does not, by itself, prove that the defendant was associated with the enterprise. Def. 1st

Resp. at 4 (Dkt. 679); Def. Instructions at 7. The Government did not object to this language. The Court concluded that this language clarifies the law and added it at the end of the instructions.

### 5. To Agree to Participate Directly or Indirectly in the Affairs of the Enterprise

Regarding the third element — that the defendant knowingly agreed to conduct or participate in the conduct of the Howard Boys enterprise — the parties had no disagreement in the preliminary instructions. And the Government's proposed instructions had no changes. Defendants' instructions collapsed this portion of the instructions into their second element, drawing upon the Sixth Circuit pattern instructions for the crime of "Conspiracy to Defraud the United States." Def. Instructions at 5.

The Government objected to the language offered by Defendants because the conspiracy instructions did not comport with the law as relates to RICO. Govt. 1st Obj. at 2 (Dkt. 673); Govt. 2d Objs. at 4 (Dkt. 684). In response, Defendants argued that the Government instructions provided "examples instead of definitions for the jury to apply." Def. 1st Resp. at 3 (Dkt. 679).

The Court overruled Defendants' objection and used the Government's proposed language. The Government's proposed language accurately reflects the law used by another Judge of this Court. See, e.g., Kilpatrick, 2013 WL 4041866, at *14 (E.D. Mich. Aug. 8, 2013). Also, Defendants agreed to this language earlier and offered no compelling reason to deviate from it. The Court also believed that providing examples aids lay people's understanding of legal concepts. Therefore, as these instructions provided appropriate examples, the Court determined that the instructions would assist the jury. Lastly, as mentioned above, the incorporation of a conspiracy definition was inappropriate.

### 6. Agree to Engage in a Pattern of Racketeering Activity

Regarding the element of "Agree to Engage in a Pattern of Racketeering Activity," the Court used the Government's version of these instructions, with some minor revisions, because it was an accurate statement of the law and it was more comprehensive with its incorporation of various racketeering acts.

Defendants objected to the use of "type or types when referring to racketeering activity." Def. First Resp. at 5 (Dkt. 679). Defendants also objected to the first full paragraph on page 32, with the sentence beginning, "In determining whether the evidence shows . . . ." Defendants argued that this language is vague and that it may allow the jury to convict Defendants on an improper basis. Id.

The Government did not respond to these objections in its papers, but at oral argument on July 16, 2014, the Government took issue with the possible omission of "types" in relation to the jury's verdict being "unanimous as to which types of racketeering activity were involved in the conspiracy." The Court had considered replacing "types" with "acts," but the Government argued that, under the prevailing case law, "types" is appropriate because the proofs at trial concerned a RICO conspiracy under 1962(d) and not a substantive RICO case under 1962(c). Defendants opposed the Government's position, but could not direct the Court to any authority.

The Court agreed with Defendants that the paragraph beginning with "In determining whether the evidence shows . . . ." was vague. In order to keep the instructions clear, the Court deleted the first full paragraph on page 32 from the Government's instructions. For clarity's sake, the Court also removed the reference to "type" on page 30.

However, the Court agreed with the Government concerning the references to "types" in the instructions regarding unanimity of the types of racketeering activity. As argued by the Government, case law amply supported the Government's proposed instructions because a

7

RICO-conspiracy charge "need not specify the predicate or racketeering acts that the defendants agreed would be committed." United States v. Applins, 637 F.3d 59, 81 (2d Cir. 2011). "[I]t is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." Id.; see id. at 80-82 (approving instructions stating that the "verdict must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed"); see also Kilpatrick, 2013 WL 4041866, at *14 ("'[F]or a charge of RICO conspiracy, a jury need only be unanimous as to the types of predicate racketeering acts that the defendant agreed to commit, not to the specific predicate acts themselves.'" (quoting United States v. Randall, 661 F.3d 1291, 1299 (10th Cir. 2011))).

Lastly, on pages 33-37 of the Government's proposed instructions, there were numerous references to a "co-conspirator" in the discussion of the alleged racketeering acts. The references to a "co-conspirator" appeared to be inconsistent with the instructions' references to a "conspirator" in other parts of the instructions on pages 24, 29-31. Because the parties offered no reason to differentiate in usage, the Court instructed the jury using "conspirator."

7.  Agreement to Commit RICO Offense.

In the Government's proposed instructions, there was a section entitled "Agreement to Commit RICO Offense." The parties had no disagreement relating to the preliminary instructions regarding this element. And the Government's proposed instructions had no changes to the preliminary instructions. Defendants' proposed instructions omitted this section, objecting that there was no authority supporting these instructions and that these instructions were redundant. Def. 1st Resp. at 6 (Dkt 679).

8

The Court overruled the objection. Defendants agreed to these instructions before and the instructions are not a misstatement of the law. The Court also believed that these instructions are helpful for the jury because of the nature of this complicated case.

8. Interstate Commerce

The parties had proposed language that was different from the preliminary instructions on the interstate commerce element. The primary difference was the language concerning the effect on commerce. The Government proposed language that tracked the Seventh Circuit pattern instructions by referencing that the alleged conduct needed to have "any degree" of effect on commerce. Defendants' language, citing Waucaush v. United States, 380 F.3d 251 (6th Cir. 2004), referenced a "substantial effect on Interstate Commerce."

In order to convict a defendant under the RICO statute, 18 U.S.C. §§ 1962(c) & (d), the Government generally needs to prove "that the enterprise's racketeering activities had a de minimis connection with interstate commerce." United States v. Gardiner, 463 F.3d 445, 458 (6th Cir. 2006). It is well-established that drug dealing is quintessential economic activity. United States v. Tucker, 90 F.3d 1135, 1140 (6th Cir. 1996). The Sixth Circuit has also held that possession of a firearm that traveled through interstate commerce affects interstate commerce. United States v. Chesney, 86 F.3d 564, 572 (6th Cir. 1996). However, if an enterprise engages only in violence, that activity is non-economic. Waucaush, 380 F.3d at 256. In such instances, there must be evidence that the activity had a substantial effect on interstate commerce. Id.

Here, the Court agreed with the Government's proposed instructions. At trial, there was evidence that the alleged enterprise trafficked drugs, which is economic activity that has effects on interstate commerce. The instructions were also clear and followed the Seventh Circuit

9

pattern instructions. The use of "any degree" was also appropriate because this is an acceptable layman's term for "de minimis." See Gardiner, 463 F.3d at 458.

The "substantial effect" language of Waucaush was inappropriate. As the Sixth Circuit noted, the indictment in Waucaush alleged only violent acts and there was no evidence of any economic enterprise. See Waucaush, 380 F.3d at 253 (indictment only alleged that gang protected their turf through murder and attempted murders). Regarding Defendants' argument about the lack of a common pot of money or group economic activity, this did not comport with the expansive definition of enterprise, which may be a loose affiliation of individuals that act as a "continuing unit that functions with a common purpose." Boyle, 556 U.S. at 946. Furthermore, there was evidence that Defendants shared firearms, drug clients, drugs/product, and cash, i.e. the numerous "five-off-the-dub" transactions.

        9. Murder-In-Aid-of-Racketeering Instructions

The parties submitted competing instructions for the murder-in-aid-of-racketeering counts. The Government's instructions contained specific instructions for each relevant Defendant — Norwood, Jonathan Walker, and Oldham — which also referred to the specific victims. Defendants only had one general instruction, and it did not reference a specific Defendant or corresponding alleged victim.

The Government objected to Defendants' instructions, arguing that Defendants' instructions contain the phrase "substantially affected interstate commerce," and that Defendants did not have a specific position within the enterprise. Govt. Objs. at 3-4 (Dkt. 673). Defendants did not have a response to the Government's objections.

The Court instructed the jury using the Government's instructions because these instructions were clearer and linked the allegations contained in the indictment with the relevant

Defendant and the alleged victim. Furthermore, for the reasons discussed in the interstate commerce section, the "substantial affect" on interstate commerce language was not warranted.

### 10. Other Instructions

The parties submitted instructions for (i) impeachment by prior inconsistent statement not under oath, (ii) testimony of an accomplice, and (iii) evidence admitted against certain defendants only. See Govt. Instructions at 89, 94, and 100; Def. Instructions at 12-14. Both sets drew from the Sixth Circuit pattern instructions. The parties had no objections concerning these instructions. Upon review, the Court discerned minimal differences that were stylistic and not substantive. For ease of reference, the Court used the Government's proposed instructions.

### III. CONCLUSION

Based on the foregoing, the Court instructed the jury as detailed above.

SO ORDERED.

Dated: July 22, 2014　　　　　　　　　　　s/Mark A. Goldsmith
　　　Flint, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 22, 2014.

　　　　　　　　　　　　　　　　　　　　s/Deborah J. Goltz
　　　　　　　　　　　　　　　　　　　　DEBORAH J. GOLTZ
　　　　　　　　　　　　　　　　　　　　Case Manager