UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



FILED

JUL 1 8 2014

CLERK'S OFFICE
FLINT

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALEXANDRA NORWOOD, et al.,

Defendants.

_____/

Case No. 12-CR-20287

HON. MARK A. GOLDSMITH
**FILED UNDER SEAL**

## OPINION AND ORDER DENYING DEFENDANTS' SECOND MOTION FOR MISTRIAL (Dkt. 628) AND DISMISSING JURORS 2 AND 9

### I. INTRODUCTION

Trial in the above-captioned matter commenced on May 27, 2014. On June 17, 2014 and June 27, 2014, the Court learned that some jurors believed unknown individuals (i) had followed some jurors varying distances from the courthouse after trial on some days, (ii) had observed the jurors' cars in the parking lot used by the jurors, and (iii) had observed the jurors leaving or arriving at the parking lot used by the jurors. Upon these reports from the jurors, the Court held two in-camera proceedings and examined each member of the jury. After the first in-camera proceeding, Defendant Johnathan Oldham filed a motion (Dkt. 628), arguing that the jury has been contaminated with fear to such an extent that the only way to avoid prejudice to him and his co-defendants is for the Court to declare a mistrial.[1] After the matter was briefed, the Court held a second in-camera proceeding, including oral argument, on June 27, 2014. For the reasons that follow, the Court denies the motion and dismisses Jurors 2 and 9, replacing them with alternate Jurors 13 and 14, respectively.

---

[1] Defendants Jonathan Walker, Jatimothy Walker, Norwood and Gills filed joinders/concurrences with respect to Oldham's motion. See Dkts. 629, 630, 632, 640.

## II. BACKGROUND

During the in-camera proceeding on June 17, 2014, the Court examined each member of the jury — the twelve regular jurors and the four alternate jurors.[2]  The Court first examined Juror 10, who said that, although she had not witnessed anything personally, she had heard from other jurors that some jurors believed that they were followed from the courthouse and that some jurors had observed (through the jury room windows) women looking at the license plate numbers of jurors' cars and that the jurors had seen these women in the courtroom.[3]  6/17/14 Tr. at 12-13.  Juror 10 added that the women were using their cell phones while looking at the license plates.[4]  Id. at 13.  Juror 10 stated these observations by other jurors would not impact her ability to be fair and impartial.  Id. at 14.  Juror 10 testified that, while she initially expressed a concern that she wanted to call her husband after hearing about the incidents from other jurors, the incidents ultimately would not affect her ability to be fair and impartial.  Id. at 25-26.

The Court then examined Juror 1, who stated that, during the previous week, he had seen a man in the gallery of the courtroom one day and that, after trial that same day, a black sport-utility vehicle had followed Juror 1 for about five to eight minutes when Juror 1 was driving home from the Court.  Id. at 31-33.  At an intersection, the black vehicle pulled up alongside Juror 1's vehicle, and Juror 1 noticed that the driver of the black vehicle was the man he had noticed in the gallery.  Id. at 32.  The man and Juror 1 made eye contact; Juror 1 thought that the man gave him a look that "was not a friendly look," but no gestures were made or words

---

[2] All Defendants agreed to the Court conducting the in-camera hearings with only attorneys present.  6/17/14 Tr. at 5-6; 6/27/14 Tr. at 1.

[3] Because the Court empaneled an anonymous jury, 5/6/14 Order (Dkt. 555), each juror has two numbers – juror identification number and seat number.  In this Opinion and Order, the Court refers to the jurors by seat number because that is how each juror is referenced in the transcript.  Jurors 13, 14, 15, and 16 were designated as the alternates.

[4] The parking lot initially used by the jury was immediately adjacent to the courthouse and was visible, in part, from the jury-room windows.  See 6/17/14 Tr. at 22.

exchanged. Id. Juror 1 also stated that, on June 16, 2014, he noticed two women, whom he recognized from the gallery and associated with Defendants, standing near the juror parking lot and pointing at his truck as he left the courthouse after trial. Id. at 34-36. No words were exchanged between Juror 1 and the women. Id. at 35. Juror 1 also stated that he had seen a white car driving on a street adjacent to the courthouse from the jury room window that another juror had identified as having followed that other juror. Id. at 38. Upon further inquiry, Juror 1 believed that the discussion among the jurors had not made the incidents "a big deal" and that personally he was "not scared at all." Id. at 39. Juror 1 stated that these incidents did not affect his ability to be fair and impartial. Id. at 39-40.

Next up was Juror 14, who stated that, on one day of the previous week, she believed that she was followed on the freeway after a trial day by a white car containing two black women. Id. at 42. Juror 14 also testified that on June 16, 2014, while in the jury room, she noticed (through the jury room windows) a woman from the gallery looking at cars in the parking lot where the jurors parked. Id. at 42-43. When a court security officer made his rounds, the woman left the area and was not seen by the officer. Id. Juror 14 stated that the incidents heightened her awareness, but that she could also continue as a fair and impartial juror. Id. at 45

The Court proceeded to question Juror 15, who stated that, on the previous day, she observed a woman that she had seen in the gallery on the sidewalk with her cell phone looking at the jurors' cars in the parking lot. Id. at 47. Juror 15 testified that the woman's activity made her nervous and suspicious, but Juror 15 also stated that she understood that the courtroom was public and that people attending trial had to park somewhere. Id. at 47-49. Juror 15 stated that she did not believe that these incidents impacted her ability to be fair and impartial. Id. at 50.

Juror 5 testified next and stated that, on a day during the previous week, he noticed a burgundy or purple car following him on the freeway on his way home from the courthouse. Id. at 53. Juror 5 stated that the car matched his speed on the freeway and, when Juror 5 exited the freeway to stop at a gas station, the car followed him and drove by him while he was at the gas station. Id. The next day, when Juror 5 was driving away after trial, he noticed two females from the gallery getting into a very similar burgundy or purple car a couple of blocks away from the courthouse. Id. at 54. Juror 5 did not exchange words or gestures with the individuals. Id. at 54-55. Juror 5 also saw a female walking near the jurors' car with her cell phone on June 16. Id. at 55-56. Upon being questioned whether these incidents impacted him, Juror 5 said that they would not affect his decision making and that he could remain fair and impartial. Id. at 56.

Juror 2 also testified that he believed that he was followed from the courthouse at some point during the previous week. Id. at 58-59. Juror 2 observed a four-door white car driven by a male matching his speed on the freeway. Id. After Juror 2 exited the freeway, the white car drove off in a different direction. Id. at 58. Juror 2 stated that no words or gestures were exchanged between him and the other driver; he had looked over and saw the other driver, but did not recognize him. Id. at 59. When asked about whether the incident would affect his ability to render a verdict, Juror 2 stated that he did not think so, but explained that this had never happened to him before. Id. at 62-63. Juror 2 said that he did not know if the incident would affect him or not. Id. at 63.

The Court then proceeded to examine the remaining ten jurors who had not reported an incident. In response to the Court's questions, the remaining jurors did not report any other specific incidents. With the exception of Juror 9 and 3, the remaining jurors all stated that they could be fair and impartial, whether or not they had heard about the other incidents from fellow

jurors. See id. at 65-66 (Juror 8); 71 (Juror 7); 75 (Juror 13); 77 (Juror 12); 82-83 (Juror 6); 91 (Juror 11); 93-94 (Juror 4); 97 (Juror 16). The Court did not ask Juror 3 about his ability to be fair and impartial because Juror 3 stated that he was unaware of any events occurring outside the courthouse. Id. at 78.

With respect to Juror 9, he testified that, from the jury-room windows, he saw a woman that he recognized from the gallery walking on the sidewalk talking on her cell phone. Id. at 84-85. Juror 9 also heard that other jurors were talking about two incidents of being followed, but not in detail. Id. at 86. Juror 9 stated that he believed that he could keep an open mind and that he could be fair and impartial. Id. at 87-88. Upon further questioning, however, Juror 9 admitted that seeing the woman on the cell phone bothered him because it made him wonder if the jury was being watched, and that this could impact his decision in deliberations. Id. at 89.

The Court also conducted a second examination of Juror 10 on June 27, 2014, after becoming apprised that Juror 10 had seen what she considered to be a suspicious white car near the jurors' new parking lot on the previous day.[5] Juror 10 stated that she became aware of the car when she pulled into the parking lot, but she never saw the driver because of the reflection of the windows. 6/27/14 Tr. at 61-64. Upon questioning by the Court, Juror 10 stated that being on the jury was "a little stressful," and that she could not be specific regarding what she noticed about the white car. Juror 10 also said that she mentioned it to a deputy United States marshal only because she believed that the marshals, who were now transporting the jurors to the courthouse from a remote parking location, had not seen the car. Id. at 67-68. Juror 10 also

---

[5] After the initial incidents, the Court changed the parking arrangements for the jurors, so that the jurors parked at a remote location and were transported to the courthouse by deputy United States marshals. 6/27/14 Tr. at 58-60. Also, because no party has yet ordered a final transcript for the proceedings on June 27, 2014, the Court cites to the rough transcript.

reaffirmed twice that the presence of the white car would not impact her ability to be fair and impartial. Id. at 64, 69-70.

### III. ANALYSIS

In seeking a mistrial, Defendants argue that the jurors' answers to the Court's questioning demonstrate that the jurors fear exposure of their identities and potential retaliation, and that "virtually all" of the jurors are intimidated. Def. Br. at 2-3, 6. Given the "extraordinary" circumstances of the case and the differing incidents reported by jurors, Defendants urge the Court to disregard the jurors' answers regarding their ability to be impartial and, instead, infer bias against Defendants. Id. at 7-8; Def. Reply Br. at 2. According to Defendants, the entire jury panel has been "contaminated" and the only remedy is to declare a mistrial. Def. Br. at 3; Def. Reply Br. at 8. Defendants also argue that there is no evidence that Defendants have instigated these incidents reported by the jurors so as to support forfeiture of the motion for mistrial. Def. Reply at 8-9. In a supplemental brief, Oldham reiterates that the fear of the jurors has continued, as shown by Juror 10's testimony on June 27, 2014, where she stated that it was "stressful" to serve on the jury. Def. Supp. Br. at 2.

The Government responds that Defendants have not carried their burden to demonstrate bias by the jurors. Gov't Br. at 4-8. The Government points out that the alleged tampering did not involve direct contact with the jurors. Id. at 4. Furthermore, according to the Government, the Court should re-examine Juror 2 and Juror 9 because their answers were equivocal. Id. at 5. The Government also argues that, if an unindicted coconspirator has engaged in the attempted juror intimidation, Defendants' motion should be barred. Id. at 8-10. The Court agrees with the Government with respect to Defendants' failure to demonstrate bias and, as explained below, denies the second motion for mistrial.

Upon being apprised of alleged jury tampering, courts are to hold a <u>Remmer</u> hearing to determine to what extent, if any, the jury has been tainted. <u>United States v. Corrado</u>, 304 F.3d 593, 597 (6th Cir. 2002).[6] "[T]he burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual partiality. Prejudice is not to be presumed." <u>United States v. Pennell</u>, 737 F.2d 521, 532 (6th Cir. 1984). "[J]uror testimony at <u>Remmer</u> hearings . . . should not be regarded as inherently suspect." <u>Id.</u> at 533. Indeed, "if a district court views juror assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether defendant has satisfied the burden of proving actual prejudice." <u>Id.</u>; <u>see also</u> <u>United States v. Zelinka</u>, 862 F.2d 92, 95-96 (6th Cir. 1988) ("Four points emerge from our decision in <u>Pennell</u>: (1) when a defendant alleges that an unauthorized contact with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the '<u>Remmer</u> hearing' is not inherently suspect.").

If a court has reasonable cause that a juror cannot perform his or her duties, Federal Rule of Criminal Procedure 24 empowers the court to remove the juror prior to the jury retiring to deliberate.[7] <u>United States v. Warren</u>, 973 F.2d 1304, 1308-1309 (6th Cir. 1992). In removing a juror who is unable to perform or disqualified from jury service, courts then replace the juror with an alternate juror. <u>United States v. Gabrion</u>, 648 F.3d 307, 338-339 (6th Cir. 2011) <u>rev'd en banc on other grounds by</u> 719 F.3d 511 (6th Cir. 2013) (replacing juror, who had been found sleeping by the court during trial at various times, with alternate juror just before deliberations); <u>United States v. Gjokaj</u>, 555 F. App'x. 581, 585-586 (6th Cir. 2014) (stating that "a trial court

---

[6] <u>See</u> <u>Remmer v. United States</u>, 347 U.S. 227, 230 (1954) (establishing procedure of examining jurors).

[7] "The court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." Fed. R. Cr. P. 24(c)(1).

may, in the exercise of its sound discretion, substitute an alternate juror for a regular juror who has become unable or disqualified to perform his duties" (citing Fed. R. Crim. P. 24(c))).

Here, the Court finds that every juror testified credibly.  The jurors involved with the alleged tampering incidents — Jurors 1, 5, 10, 14, 15 — all testified that the incidents did not affect their ability to be fair and impartial.  6/17/14 Tr. at 25-26, 39-40, 45, 50, and 56. Furthermore, Jurors 4, 6, 7, 8, 11, 12, 13, and 16 all testified that they could be fair and impartial, although they were not personally involved with the incidents.  See id. at 65-66, 71, 75, 77, 82-83, 91, 93-94, 97.  The Court relies on these statements by the jurors, and, finding them credible, holds that Defendants have not met their burden in demonstrating bias.[8]  Pennell, 737 F.2d at 533.

With respect to Juror 2 and Juror 9, however, the Court finds their responses troubling because, unlike the other jurors, these jurors gave equivocal responses regarding their ability to be fair and impartial.  Juror 2 stated that he did not think that the incident would affect his ability to be fair and impartial, but he also expressed that this had never happened to him before and he did not know how the incidents would affect him.  6/17/14 Tr. at 62-63.  Furthermore, during questioning, the Court found Juror 2 to be uncomfortable and hesitant in answering the Court's questions.  Similarly, Juror 9 did not provide an affirmative response about his ability to be fair and impartial, and he stated that seeing the woman on the cell phone bothered him and made him wonder if the jury was being watched.  Id. at 89.  Juror 9 testified that this could impact his decision in making a ruling in this case.  Id.

The statements of Jurors 2 and 9 contrast with the unequivocal and unhesitating responses of the other jurors regarding their ability to be impartial and fair.  The Court is

---

[8] By a separate Opinion and Order, the Court addresses the dismissal of Juror 7, and replacement of her with an alternate, Juror 15.

concerned about the "possible prejudice" that may result if Jurors 2 and 9 sit in deliberations. United States v. Davis, 407 F. App'x 32, 37 (6th Cir. 2011) (affirming denial of mistrial motion where the court dismissed a juror for "possible prejudice"). A court's concern over a juror's ability to perform his or her duties is sufficient to confer reasonable cause to remove a juror pursuant to Rule 24. See, e.g., United States v. Cantu, 229 F.3d 544, 550 (6th Cir. 2000) (reasonable cause supported replacing juror who might not have been qualified due to the unclear status of juror's previous conviction and the possibility that the juror's concern about his own situation might affect his ability to be fair and impartial). Therefore, the Court declines to re-examine Jurors 2 and 9, as urged by the Government, and instead replaces them with Jurors 13 and 14, respectively. Fed. R. Crim. P. 24(c)(1); see also Gjokaj, 555 F. App'x. at 585-586.

In removing Jurors 2 and 9, the Court rejects Defendants' arguments in support of mistrial. Defendants argue broadly that "virtually all the jurors" have been intimidated and that fear has contaminated the jury panel. Def. Br. at 2-3. Defendants highlight Juror 10's testimony regarding her observation of a white car near the juror's parking lot to show that the jurors' fear is continuous. Def. Supp. Br. at 2. The jurors' testimony, however, does not support this argument. As the record makes clear, some jurors expressed concern about the incidents, but others did not. See, e.g., 6/17/14 Tr. at 55 (Juror 5 stating that he was not scared); 74-75 (Juror 13 testifying that the discussion of the incident amongst some jurors was "a pretty brief incident" and that she did not pay much attention to the discussion); 78 (Juror 3 stating that he did not hear about the incidents). Furthermore, regarding Juror 10, the Court found her to be credible and forthcoming about her ability to be impartial and fair. 6/27/14 Tr. at 64. In questioning Juror 10 a second time on June 27, 2014, the Court found no indications of fear, as perceived by Defendants. Juror 10 relayed a vague "gut feeling" to a deputy U.S. marshal about a car she

9

observed at the parking lot — nothing more. Id. at 61. The Court finds no basis to disregard Juror 10's continued statements of her ability to be fair and impartial. Pennell, 737 F.2d at 533.

Likewise, Defendants' argument that the Court must presume bias based on the extraordinary circumstances in the case lacks merit. The incidents at hand did not involve any spoken words or gestures made between jurors and the individuals. Without any direct contact between jurors and an individual or a defendant, the facts of this case are not extraordinary, despite Defendants' conclusory contention that they are. See Davis, 407 F. App'x at 36-37 (denying motion for mistrial, but dismissing juror who had encountered defendant in hallway of courthouse); Gjokaj, 555 F. App'x at 586 (denying mistrial, but dismissing juror who was approached at her home at night by a man she did not know who told her that the Government was trying to deceive the jury).[9]

Accordingly, the Court denies Defendants' second motion for mistrial (Dkt. 628).[10]

---

[9] Defendants' authority in support of the existence of extraordinary circumstances undermines their argument because none of the cases Defendants cite involved jury tampering and are otherwise distinguishable. See Def. Reply Br. at 2 (citing McDonough Power Equip. v. Greenwood, 464 U.S. 548 (1984) (denying motion for new trial where plaintiff's attorney discovered post-trial that juror's answers in voir dire concealed the fact that juror's son sustained an injury, even though plaintiff's counsel inquired about family members sustaining injuries in a products liability action, because plaintiff could not demonstrate that juror was biased); Zerka v. Green, 49 F.3d 1181 (6th Cir. 1995) (denying motion for new trial in a civil rights case, involving excessive force claim against police officer, where plaintiff discovered post-trial that juror omitted relationships with police officers in order to serve on civil jury because juror could not demonstrate that juror held bias against plaintiff); Tinsely v. Borg, 895 F.2d 520, 529 (9th Cir. 1990) (rejecting argument by habeas petitioner, who was convicted of rape, that court should presume bias held by a juror, a psychiatric social worker who had had counseled a rape victim, because (i) the juror had not been raped, (ii) no close family member of the juror had been raped, (iii) the juror lacked any prejudicial information about the defendant, and (iv) there was "no personal connection" between the juror and the petitioner, the victim, or any other witness).

[10] The Court agrees with Defendants that the Government has not presented evidence that Defendants were involved in the alleged incidents and finds no basis to deny Defendants' motion on a theory of forfeiture. Furthermore, the Court rejects Defendants' argument made in open court on July 18, 2014 that the passage of time counsels against excusing jurors. The Court's

SO ORDERED.

Dated: July 18, 2014                         s/Mark A. Goldsmith
        Flint, Michigan                      MARK A. GOLDSMITH
                                             United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 18, 2014.

                                             s/Deborah J. Goltz
                                             DEBORAH J. GOLTZ
                                             Case Manager

---

concerns with regard to Jurors 2 and 9 (as well as with respect to Juror 7, addressed in a separate opinion be issued today) are not alleviated by the passage of time.