UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        HON. MARK A. GOLDSMITH

v.                                            Case No. 12-CR-20287

D-1 ALEXANDRA L. NORWOOD,
D-2 JATIMOTHY E. WALKER,
D-3 JONATHAN E. WALKER,
D-4 JOHNATHAN L. OLDHAM, and
D-8 LEON GILLS,

        Defendants.
_____/

**MEMORANDUM OPINION DENYING DEFENDANT OLDHAM'S MOTION TO EXCLUDE STATEMENT (Dkt. 656), GRANTING THE GOVERNMENT'S PENAL-INTEREST MOTION (Dkt. 657), and DENYING DEFENDANT GILLS'S MOTION FOR LIMITING INSTRUCTION (Dkt. 651)**

A joint trial involving the six co-Defendants began in the above-captioned case on May 27, 2014. During trial, the Government sought the admission of various statements under the statement-against-penal-interest exception to the hearsay rule, which is contained in Federal Rule of Evidence 804(b)(3). Three of these statements were the subject of more intensive argument and/or briefing. On July 1 and 2, 2014, the Court ruled that two of these statements were admissible. The Court heard argument on the third statement on July 3, 2014 and July 7, 2014. The Court now provides this decision to explain fully its reasoning in admitting all three statements.

### I. LEGAL PRINCIPLES

The "statement-against-penal-interest" exception to the hearsay rule provides as follows:

> The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

1

> A statement that:
>
>> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>>
>> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).

If the statement qualifies for admission under this exception, it is not just admissible against the declarant. See, e.g., United States v. Johnson, 581 F.3d 320, 327 (6th Cir. 2009) (statement by O'Reilly admissible against Johnson); Williamson v. United States, 512 U.S. 594, 603 (1994) ("[A] declarant's squarely self-inculpatory confession — 'yes, I killed X' — will likely be admissible under Rule 804(b)(3) against accomplices of his who are being tried under a co-conspirator liability theory."); see also id. ("[B]y showing that the declarant knew something, a self-inculpatory statement can in some situations help the jury infer that his confederates knew it as well."); Neuman v. Rivers, 125 F.3d 315, 320 (6th Cir. 1997) ("If the overheard statements were made by the defendant, they were admissible as statements against penal interest. If they were made by his father, they were similarly admissible as statements against penal interest.").

For a statement to be admissible under Rule 804(b)(3), three factors must be satisfied: "[(i)] the declarant must be unavailable, [(ii)] the statement must, 'from the perspective of the average, reasonable person,' be adverse to the declarant's penal interest, and [(iii)] corroborating circumstances must 'truly establish the trustworthiness of the statement.'" Johnson, 581 F.3d at 326-327 (quoting United States v. Tocco, 200 F.3d 401, 414 (6th Cir. 2000)).

With respect to the first factor, an individual who is likely to invoke his or her Fifth Amendment privilege against self-incrimination if called to testify may be rendered unavailable as a witness. Id. at 327; see also Fed. R. Evid. 804(a)(1).

Regarding the second factor, the Supreme Court has explained that "whether a statement is self-inculpatory or not can only be determined by viewing it in context." Williamson, 512 U.S. at 603. For example, statements that are neutral on their face may actually be against the declarant's penal interest when put in context. Id. Therefore, determining whether a statement is self-inculpatory "can only be answered in light of all the surrounding circumstances." Id. at 604.

However, just because part of a statement is self-inculpatory does not mean the entire statement is admissible; to the contrary, "Rule 804(b)(3) . . . does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." Id. at 600-601. This is because "[s]elf-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements." Id. at 600. Courts also must be cognizant to distinguish between those statements that are actually self-inculpatory, and those that "merely attempt[] to shift blame or curry favor." Id. at 603.

Nevertheless, just because a statement also incriminates other individuals does not mean the statement is inadmissible. United States v. Tocco, 200 F.3d 401, 415 (6th Cir. 2000) ("Thus, we decline to hold that those statements [against penal interest] were rendered inadmissible by virtue of the fact that others were implicated."). Indeed, as Justice Scalia observed in his concurrence in Williamson, as adopted by the Sixth Circuit in Tocco,

> For example, if a lieutenant in an organized crime operation
> described the inner workings of an extortion and protection racket,

3

> naming some of the other actors and thereby inculpating himself on racketeering and/or conspiracy charges, I have no doubt that some of those remarks could be admitted as statements against penal interest.

Id. (quoting Williamson, 512 U.S. at 606-607 (Scalia, J., concurring)). However, statements that inculpate others — while doing little to subject the declarant to liability — are generally not admissible under Rule 804(b)(3). See Williamson, 512 U.S. at 604 ("A reasonable person in Harris'[s] position might even think that implicating someone else would decrease his practical exposure to criminal liability, at least so far as sentencing goes.").

Finally, in assessing the third factor — the trustworthiness of the statement — the Court must not focus "on whether other evidence in the case corroborates what the statement asserts, but rather on whether there are corroborating circumstances which clearly indicate the trustworthiness of the statement itself." Johnson, 581 F.3d at 327 (quotation marks and citation omitted). In making this determination, the Court need not "'be completely convinced as a prerequisite to admission that the . . . statements are true. Rather, [it] need only find that sufficient corroborating circumstances exist which indicate the statement's trustworthiness.'" Romans v. Berghuis, No. 06-11330, 2007 WL 4247607, at *12 (E.D. Mich. Dec. 4, 2007) (quoting United States v. Price, 134 F.3d 340, 347 (6th Cir. 1998)).

In determining whether corroborating circumstances establish the statement's trustworthiness, courts have looked at various factors, including, but not limited to: whether the statement was recorded, Johnson, 581 F.3d at 327; whether the statement was made to a friend or to law enforcement, id.; whether self-interested motives diminish the trustworthiness of the statement, such as seeking to shift blame, curry favor, or minimize the declarant's role, United States v. Franklin, 415 F.3d 537, 547 (6th Cir. 2005); and whether the statements are mere puffing or bragging, id.

## II. DISCUSSION

The parties have provided extensive briefing and argument on three statements: (i) a statement purportedly made by Defendant Oldham to Roderick Dudley — an alleged unindicted coconspirator who testified at trial — regarding the shooting of Malachi Wilson; (ii) a statement purportedly made by Defendant Gills to Rodney Harden — an individual who testified at trial — regarding the shooting of Malachi Wilson; and (iii) a recorded telephone conversation between Defendant Jatimothy Walker and an unidentified female discussing (a) a plan to mislead the police regarding the ownership of certain drugs and a firearm and (b) a purported apology by Gills for falsely claiming Walker was "telling."[1] The Court addresses each statement in turn.

### A. Roderick Dudley

The Government notified Defendants that Roderick Dudley — an unindicted coconspirator — was likely to testify that, while in jail together, he had a conversation with Oldham regarding the shooting of Malachi Wilson in response to information he (Dudley) received from Shawn Gardner, another coconspirator. Oldham allegedly told Dudley that he (Oldham) shot at Wilson, chased him down, and then stood over him and fired more rounds. Oldham also purportedly stated that he was not upset following this shooting. See R. Dudley Vol. I at 18-21; R. Dudley Vol. II at 4-6.

Defendants objected to the admission of this statement under Rule 804(b)(3), claiming that it was not sufficiently trustworthy. See R. Dudley Vol. I at 21; 7/1/2014 (Rough Tr.) at 4-5. The Court offered the parties an opportunity to question Dudley outside the presence of the jury to develop their arguments regarding trustworthiness, but the parties declined this offer. See 7/1/2014 (Rough Tr.) at 5, 10-11.

---

[1] Any references to "Walker" contained within this Opinion are to Defendant Jatimothy Walker, not Defendant Jonathan Walker.

The parties do not dispute that the statement was against Oldham's penal interest and that Oldham was unavailable for purposes of Rule 804(b)(3). The Court agrees. The statement was clearly of such a nature that a reasonable person would recognize that the statement could subject him or her to criminal liability, and Oldham was "unavailable" because he was likely to exercise his Fifth Amendment privilege against testifying. See United States v. Johnson, No. 05-80025, 2007 WL 2420786, at *3 (E.D. Mich. Aug. 23, 2007). The only point of disagreement, then, is whether corroborating circumstances establish the statement's trustworthiness such that it should be admitted under Rule 804(b)(3).

As explained on the record, the Court finds that they do. Oldham made the statement to Dudley — a friend, or, at a minimum, not someone with whom he was hostile — rather than law enforcement. Johnson, 581 F.3d at 327. The statement did not seek to shift blame or minimize Oldham's role in the shooting; indeed, Oldham strongly inculpated himself. Id.; see also Franklin, 415 F.3d at 548. Further, there is no indication that Oldham made the statement to curry favor or as part of an official investigation. Nor is there any reason to believe Oldham had a motivation to lie about having shot Malachi Wilson. Johnson, 581 F.3d at 327; Franklin, 415 F.3d at 548. Finally, this serious statement appears to have been made in response to a direct question from Dudley regarding information he learned from Gardner, and thus constituted more than mere idle chatter or puffery. Thus, the Court finds this statement admissible under Rule 804(b)(3).

**B. Rodney Harden**

The Government next sought to introduce testimony about the shooting of Malachi Wilson through Rodney Harden. Before the testimony was introduced, Oldham filed a motion to exclude the statement (Dkt. 656), the Government filed a response entitled a "penal interest

motion" (Dkt. 657), and the Court heard argument on July 1 and 2, 2014. The Court also allowed the parties to question Harden outside the presence of the jury to determine (i) precisely what Harden would say he had been told, and (ii) whether corroborating circumstances indicated the statement's trustworthiness. The Court ultimately issued a bench ruling admitting the statement under Rule 804(b)(3). See 7/2/2014 (Rough Tr.) at 27-28.

Harden claimed that Gills told him that he (Gills) was with Ricco Holmes on the north side of Flint when Holmes received a call from "John Boy" (Johnathan Oldham) and "Dude" (Shawn Gardner). Gills purportedly told Harden that "they" (Oldham and/or Gardner) said that "they had Malachi" Wilson, and asked what they should do. Gills said he then told them to "lay law down." Gills also purportedly told Harden that he (Gills) asked Holmes to take him back to the south side, but Holmes refused. R. Harden Vol. II at 5-11.

Harden testified that Gills told him this information while the two were housed together in the F-Pod of Midland County Jail, also known as the "hole." Id. at 6-7. Harden claimed that he had many conversations with Gills while at Midland County Jail about a variety of topics. Id. at 7-8, 16. Harden also explained that, while in F-Pod, he and Gills were permitted to be out of their cells for one hour each day, and that this particular conversation occurred while Harden was visiting Gills's cell during one of these periods in October 2013. Id. at 7-8.

Once again, the parties did not dispute that this statement was against Gills's penal interest and that Gills was "unavailable" under Rule 804(b)(3). However, Defendants objected to the introduction of this statement for two reasons: (i) there were not sufficient guarantees of trustworthiness, and (ii) the statements that Oldham, Gardner, and/or Holmes made to Gills, that Gills then purportedly relayed to Harden, were inadmissible hearsay within hearsay under Federal Rule of Evidence 805. Oldham Br. at 3-5 (Dkt. 656).

As explained on the record, the Court concludes that the statement is admissible as a statement against Gills's penal interest. With respect to the first and second factor, the Court finds — and the parties do not dispute — these were met: (i) the statement was of such a nature that a reasonable person would recognize that it could subject him or her to criminal liability, and (ii) Gills was "unavailable" during the Government's case-in-chief, i.e., when the statement was first admitted, because the Government could not compel him to testify, even though he ultimately decided to take the stand during his case-in-chief. See Johnson, 2007 WL 2420786, at *3.

The Court also concludes that corroborating circumstances establish the trustworthiness of the statement under Rule 804(b)(3). Gills purportedly made the statement to Harden, a colleague with whom he shared a mutual friend, Ricco Holmes. Defendants do not dispute that Gills and Harden were in the F-Pod together at the time of the alleged statement, and Harden testified that he and Gills had various conversations during this period. Indeed, Harden stated that this discussion concerning the shooting of Malachi Wilson was part of a longer conversation between the two about "stuff in the street." R. Harden Vol. II at 8; see also id. at 19, 24.

The nature of the statement also indicates its trustworthiness. The statement was not made to law enforcement and does not appear to have been made to curry favor. Furthermore, there does not appear to have been a reason for Gills to lie or deceive Harden, nor was the statement made as part of a formal investigation. The statement also did not minimize Gills's role in the shooting; to the contrary, it suggested that he acted as the orchestrator of events, instructing Oldham and/or Gardner to "lay law down."

Defendants argued that the statement was suspect because Harden could not identify whether Gills told him if it was Oldham or Gardner who said "they" had Malachi Wilson. See

8

7/2/2014 (Rough Tr.) at 22-24. Defendants are mistaken. Harden testified during voir dire, outside the presence of the jury, that Gills told him that Oldham and Gardner called Holmes, who handed the phone to Gills. Oldham and Gardner then said that "they had Malachi." See R. Harden Vol. II at 8-9. Harden did not say that he could not recall — or that Gills had difficulty recalling — whether it was Oldham or Gardner who made the statement. Nor is there anything suspect in Harden's or Gills's use of the term "they." The generalized use of the plural form "they" in a conversation purportedly involving three or more participants would not be inappropriate.[2]

Defendants also claimed the statement was not sufficiently trustworthy because it was nothing more than mere bragging or puffery intended to impress Harden. Oldham Br. at 3-4. The Court rejects this argument because it is based solely on speculation. Defendants offer no evidence or explanation as to why Gills would seek to impress Harden or curry favor with him, nor do Defendants explain why the other indicia of trustworthiness should be disregarded even if the statement were intended to impress Harden. Although the fact that a statement contains bragging may undermine trustworthiness in some instances, the Court concludes that the totality of the circumstances in this case — including that Gills was speaking to an acquaintance and did

---

[2] After the Court admitted the statement based on the voir dire, Harden testified before the jury both that Gills told him that "they" said they had Malachi, and, later, that it was Oldham who made this statement to Gills. R. Harden Vol. II at 31. These answers came in response to different questions based on an objection by Mr. Minock, counsel to Oldham:

> Q: And did Mr. Gills tell you what they said to him?
> A: He said they got Malachi.
>     Mr. Minock: Objection to they.
> Q: Well, what's your understanding? What did Mr. Gills tell you?
> A: John Boy [Oldham] was on the phone and said they had Malachi. What they want him to do?

7/2/2014 (Rough Tr.) at 35. The Court finds these responses are not inconsistent with the earlier testimony during voir dire, because Harden's use of "they" included Oldham.

not minimize his involvement — establishes the statement's trustworthiness. See Neuman, 125 F.3d at 320 (statements that included "bragging about having had sex with someone" were admissible as statements against penal interest in case for criminal sexual conduct). Therefore, the Court concludes that Gills's statement is admissible under Rule 804(b)(3).[3]

Although the statement by Gills is admissible as against his penal interest, Defendants claimed that the statements purportedly made by Oldham, Gardner, and/or Holmes contained within Gills's statement also must be independently admissible under Rule 805.[4] Oldham Br. at 4-5. The Court agrees, but finds that the Government met its burden for admitting these statements.

Federal Rule of Evidence 805 provides, as follows: "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." In other words, "[i]n order to admit an out-of-court statement that is nested within another, Rule 805 requires that both statements be admissible." United States v. Payne, 437 F.3d 540, 547 (6th Cir. 2006) (emphasis in original).

---

[3] Oldham also argued that the Court should not admit the statement because it was not timely disclosed. Oldham Br. at 2. The Government conceded that it inadvertently failed to timely disclose the statement, but highlights that Defendants have suffered no prejudice as a result of the late disclosure. Gov't Br. at 6-7. The Court agrees with the Government. At the hearing on the motion, Defendants were unable to articulate any precise prejudice arising from the late disclosure, other than a vague, "speculati[ve]" possibility that Gills's counsel may have conducted his cross-examination of another coconspirator who testified earlier differently. See 7/1/2014 (Rough Tr.) at 152-154. However, Gills's counsel was unable to articulate precisely how his cross-examination would have changed, or even that it affirmatively would have. Moreover, once the statement was disclosed, the Court bifurcated Harden's testimony to give counsel time to prepare a new cross-examination for Harden based on the statement. See 6/26/2014 (Rough Tr.) at 5-7, 105-108. Accordingly, the Court concludes that Defendants suffered no prejudice from the late disclosure.

[4] Defendants fail to identify what statements by Holmes they think are problematic. Rather, their argument focused exclusively on Oldham's and/or Gardner's statement that they had Malachi Wilson. Therefore, it is unclear to which portion of Harden's testimony regarding Holmes that Defendants object.

10

With respect to the statement that "they" had Malachi Wilson, the Government argued that this statement was independently admissible as a coconspirator statement under Rule 801(d)(2)(E). Gov't Br. at 5. To admit a statement under that rule, the Government must prove by a preponderance of the evidence "(1) that a conspiracy existed, (2) that the defendant against whom the [statement] is offered was a member of the conspiracy, and (3) that the hearsay statement was made in the course of and in furtherance of the conspiracy." United States v. Vinson, 606 F.2d 149, 152 (6th Cir. 1979).

As with all other purported coconspirator statements in this case, the Court conditionally admitted the statements pursuant to Rule 801(d)(2)(E), subject to a later decision whether the Government had met its burden on admissibility. See 5/6/2014 Op. and Order (Dkt. 556); 5/15/2014 Order at 2-3 (Dkt. 586). On July 17, 2014, the Court ruled on the record that the Government had met its burden, as further detailed in another opinion issued today.

In arguing against admissibility, Defendants claimed that the statement that "they had Malachi" Wilson should not be admitted, because it is not known whether it was Oldham or Gardner who made it. See 7/2/2014 (Rough Tr.) at 23-24. The Court rejects this argument for two reasons.

First, the Government alleged that both Oldham and Gardner were members of the conspiracy — a contention that the Court finds substantiated.[5] It is thus irrelevant whether it was Oldham or Gardner who made the statement, as both would qualify as coconspirators.

---

[5] The Court issued another opinion today, explaining why this statement is admissible under Rule 801(d)(2)(e), including describing the evidence that a conspiracy existed, that Oldham and Gardner were members of the conspiracy, and that this statement was made during, and in furtherance of, the conspiracy. With respect to Oldham, the Court found that the Government had shown, by a preponderance of the evidence, that he was a member of the conspiracy, given testimony by coconspirator witnesses identifying him as such (X. Turner Vol. I at 43), his own recorded statements identifying himself as a "Hot Boy" (Exhibit 82/82A), his tattoos, and evidence and testimony that Oldham sold drugs in the territory and committed acts of violence in

11

Second, even if the declarant's identity were entirely unknown — as opposed to identifying two possible declarants, but not knowing which of the two made the statement — this would not make the statement inadmissible per se. For example, in United States v. Martinez, 430 F.3d 317, 326 (6th Cir. 2005), the Sixth Circuit explained that "[a]n anonymous statement may be admissible under Rule 801(d)(2)(E) if circumstantial evidence permits a finding by a preponderance of the evidence that there was a conspiracy involving the author and the defendant, and the statement was made in the course and furtherance of the conspiracy." In other words, "[w]hat is essential is that the government show that the unknown declarant was more likely than not a conspirator." Id. (quotation marks and citation omitted).

Here, the statement to Gills that the declarant had Malachi Wilson makes it more likely than not that the declarant was a conspirator; under the Government's theory, the declarant spoke to Gills and asked how to proceed in light of the underlying feud involving Gills and Malachi Wilson's brother. Given that the Government alleged that one purpose of the purported conspiracy was to support other members with their feuds, see Am. First Superseding Indictment, Count I, ¶ 8 (Dkt. 191), the call to Gills asking how to proceed could have been in furtherance of the conspiracy. Therefore, the anonymity of the declarant is not determinative.

Accordingly, the Court denies Defendant Oldham's motion to exclude the statement (Dkt. 656), and grants the Government's penal-interest motion (Dkt. 657).

**C. Jatimothy Walker Recorded Phone Call**

---

retaliation for acts of disrespect against other members (X. Turner Vol. I at 108; R. Harden Vol. II at 31-32; Exhibit 367). Similarly, the Court found that the Government had shown, by a preponderance of the evidence, that Gardner was a member of the conspiracy, based on testimony identifying him as a member (X. Turner Vol. II at 13), stating that he sold drugs in the territory (id.), and describing acts of violence he committed in retaliation for acts of disrespect and violence against other members (R. Harden Vol. II at 30-31; C. Orr at 82-83), as well as evidence of his tattoos (Exhibit 57-1 to 57-4).

12

The Government also introduced into evidence a recorded telephone conversation between Jatimothy Walker, while he was incarcerated, and an unidentified female. See Ex. 82A. The recording initially was admitted into evidence and played for the jury without any objection from Defendants; however, the Court did give a limiting instruction — at the parties' request — that it was only admissible against Walker. See 6/16/2014 (Rough Tr.) at 119-120. Later in trial, the Government proposed playing the recording again for the jury against all Defendants. At that time, Gills objected to the admissibility of the statements on the recording. See 6/25/2014 (Rough Tr.) at 151-157.

During the portion of the phone conversation that was played for the jury, Walker discussed two topics with the unidentified female: (i) a purported plan to split blame for found contraband, and (ii) an apology by Gills for purportedly accusing Walker of "telling." The Court addresses the admissibility of each topic in turn.

**1.  Statements Regarding the Plan to Split Blame**

During the call with the unidentified female, Walker discussed an incident where a vehicle in which he, Gills, and Alan Cunningham were occupants was pulled over. During this stop, the officers located drugs both on Walker and in the vehicle, as well as a firearm. In a written statement to the police, Walker admitted that the drugs on his person were his; that the drugs in the vehicle were not his, but that he put them into the car for an unidentified individual; and that the firearm did not belong to him. See T. Simpson, 6/25/2014 (Rough Tr.) at 76-78; W. Suttles, 6/25/2014 (Rough Tr.) at 123-124; Ex. 302. However, during the recorded phone call, Walker told the unidentified female of a plan the group originally formed to split responsibility for some of the found items.[6] The relevant portion of the recording is as follows:

---

[6] As mentioned, Walker's conversation with the unidentified female was recorded and the Government has produced a transcript. Gills does not object to the transcript's accuracy.

13

JW      But look though the it be it be them fuck niggas be telling on niggas like like that nigga Leon Le Le I wouldn't be in here if it wasn't for that bitch ass nigga man.

UF      I don't even know who the fuck that is either.

JW      Man B.G.'s little brother man Leon.

UF      Oh.

JW      Yeah man. I wouldn't be in here if it wasn't for that bitch as nigga on some real shit. The nigga told the police the nigga the nigga had a pistol on him you know what I'm saying? I gave I told ah ah ah A.P. to take the pistol you know what I'm saying? I'm like A.P. take this pistol. I'm like Le Le man you take one of these ounces you know what I'm saying? So we get down town and shit A.P. take the pistol. I go back there and tell them the pistol A.P.'s and one of the ounces is Leon and one of them mine right? This nigga go back there and tell them both of the ah ounces mine and the pistol A.P.'s and shit and get off with nothing.

UF      Damn

JT      You know what I'm saying? I would of man I would of got I would have got ah I would have got I would got a one to eight man. I would have got a one to eight. I'd be home right now.

UF      I did not know that.

See 8/1/2009 Tr. at 1 (Dkt. 651-1).

Gills objected to the introduction of this statement by filing a motion for a limiting instruction (Dkt. 651). Gills claimed that the statement was not admissible against him under Rule 804(b)(3), because it was not against his penal interest. Gills recognized that the statement incriminated Walker, but Gills claimed that it was inadmissible against him (Gills) because it exculpated — rather than inculpated — him (Gills). Gills Br. at 4 (Dkt. 651). The Government responded that Gills misunderstood the rule, and that the proper inquiry is whether the statement is against the declarant's penal interest, i.e., Walker's, not Gills's. Gov't Br. at 7 (Dkt. 657).

14

In reply, Gills stated that, "after reading all the briefing and filings on this issue, [he] now concedes that [the Government's argument] may well be" accurate. Gills Reply at 3 (Dkt. 664). However, Gills argued that although the statement "arguably meets . . . the first two of [the] requirements" for admissibility under Rule 804(b)(3), the statement was not sufficiently trustworthy to be admissible. In particular, Gills claimed that the statement was not trustworthy because (i) it could not be accurate, and (ii) it was mere bragging or puffery to impress the unidentified female. Id. at 3-4.

The Court finds that the statement is admissible under Rule 804(b)(3). The statement was against Walker's penal interest because it incriminated him; the statement suggested that Walker sought to evade a harsher punishment by devising a plan to mislead law enforcement regarding the ownership of the drugs. Therefore, from the perspective of a reasonable person, the statement was against Walker's penal interest. Furthermore, Walker was likely to invoke his Fifth Amendment privilege if called to testify and was, therefore, unavailable as a witness. Johnson, 581 F.3d at 327.

The Court also concludes that corroborating circumstances indicate the statement's trustworthiness under Rule 804(b)(3). The statement was recorded, which eliminates the risk that it will not be relayed to the jury accurately. See id. The statement also was not made to law enforcement or in the course of a formal investigation, but rather to someone who appears to be a friend, family member, or confidant. Id. Therefore, Walker was not attempting to curry favor from law enforcement when making the statement, and there was no reason to lie or deceive the individual on the other end of the line. Moreover, Walker did not minimize his role in the agreement; to the contrary, he described his masterminding of the plan to have Gills take

15

responsibility for some of the controlled substances. Id. The Court, therefore, finds that the statement carries sufficient guarantees of trustworthiness.

Gills argued that the statement is not sufficiently trustworthy because it cannot be true. In particular, Gills maintained that the trial testimony and evidence suggested that Gills refused to talk to law enforcement, whereas Walker tells the unidentified female that Gills told law enforcement that the drugs were Walker's. Gills Reply at 3-4.

In making this argument, however, Gills asks the Court to determine the truthfulness and accuracy of the statement itself. The Sixth Circuit has made clear that this is not a proper inquiry under Rule 804(b)(3): "The third prong of Rule 804(b)(3)'s trustworthiness analysis requires us to focus not 'on whether other evidence in the case corroborates what the statement asserts, but rather on whether there are corroborating circumstances which clearly indicate the trustworthiness of the statement itself.'" Johnson, 581 F.3d at 327 (citing Franklin, 415 F.3d at 547). Gills certainly was free to undermine the accuracy of the statement on this basis before the jury; but courts do not consider the accuracy of the statement in determining admissibility under Rule 804(b)(3).

Gills also argued the statement is not sufficiently trustworthy because it was mere puffery or bragging. The Court rejects this argument for the same reason discussed in section II.B., supra. Therefore, the Court concludes that this portion of Walker's statement is admissible as a statement against his penal interest.

Before admitting the statement outright, however, the Court notes that some of this portion of the recording potentially contains hearsay within hearsay under Rule 805. In particular, Gills's purported statement to law enforcement that the drugs were Walker's and the gun was A.P.'s is an out-of-court statement that needs to be independently admissible. However,

16

the Government has stated that it was not introducing this underlying statement for the truth of the matter asserted, but rather to show its effect upon Walker. In other words, the Government was not introducing what Walker said Gills told law enforcement to show what Gills actually told law enforcement, but rather to show that Walker created a plan to distribute the drugs between himself and Gills, which he believed Gills violated. See 7/3/2014 (Rough Tr.) at 8-9.

The Court agrees that the underlying statement was not offered for the truth of the matter asserted, and thus does not constitute hearsay. Whether Gills actually did or did not talk to law enforcement is irrelevant to whether Walker thought Gills did not go forward with the purported plan to split the drugs. And Walker's belief that Gills did not do so reinforces that such a plan existed. Therefore, the underlying statement about what Gills purportedly said was independently admissible as non-hearsay, see Fed. R. Evid. 801(c)(2), and the statement was admissible against all Defendants.

**2. Statements Regarding Jatimothy Walker "Telling"**

In a later part of the recorded conversation, Walker told the unidentified female about how Gills wrote a rap song in which he falsely claimed Walker had been "telling." Walker went on to explain how Gills purportedly apologized profusely for writing this song:

- JW    Hell yeah man. While that nigga while that nigga all making songs about me telling and shit you know what I'm saying?

- UF    Right

- JW    And I seen him and when I was at the county they put that nigga on my floor man that nigga was crying and everything like "man J.T. I'm sorry man like I'm sorry man I'm gonna redo that song man I'm sorry man like man I should have I should waited to talk to you before ah I made any decisions man."

- UF    UI

- JW    "Man you the realest nigga I know man. I'm sorry man."

17

See 8/1/2009 Tr. at 2 (Dkt. 651-1).

Gills originally included this portion of the statement with his motion requesting a limiting instruction. However, on July 7, 2014, Gills's counsel stated on the record that, if the Court was inclined to admit the previous portion of the statement (regarding the plan to allocate the drugs between Gills and Walker), then the Court should not "parse" the statement for purposes of giving limiting instructions. See 7/7/2014 (Rough Tr.) at 160-162. In other words, Gills stated that if the Court was going to admit the first part of the statement against all Defendants, then both portions — including the portion regarding Gills's purported apology — should be admitted without any limiting instructions.

Given that the Court admitted the earlier portion of the recording against all Defendants for the reasons described above, the Court deems any argument by Gills regarding this latter portion to be abandoned. Moreover, no other Defendant filed a notice of joinder in Gills's motion, nor did any other Defendant object following Gills's counsel's claim that the Court should not "parse" the statement to give limiting instructions if the Court was inclined to give instructions as to some, but not all, of the statement. Therefore, the Court admits the portion of the statement dealing with Gills's purported apology for accusing Walker of "telling."[7]

### III. CONCLUSION

For the reasons described above, the Court denies Defendant Oldham's motion to exclude statement (Dkt. 656), denies Defendant Gills's motion for limiting instruction (Dkt. 651), and grants the Government's penal-interest motion (Dkt. 657).

---

[7] Gills also argues that the recording should be inadmissible because he was not notified in advance that it would be introduced against anyone other than Walker. See Gills Br. at 5-6. The Court rejects this argument. Like the Harden statement described in footnote 3, supra, Gills fails to articulate any prejudice arising from the purportedly late disclosure that the Government intended to introduce the recording against Defendants other than just Walker. Therefore, the Court rejects this argument.

SO ORDERED.

Dated: May 13, 2015           s/Mark A. Goldsmith
       Detroit, Michigan      MARK A. GOLDSMITH
                              United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 13, 2015.

                              s/Johnetta M. Curry-Williams
                              Case Manager