UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

        Plaintiff,                                 No. 12-cr-20287

v.                                              HON. MARK A. GOLDSMITH

D-1 ALEXANDRA NORWOOD,

        Defendant.

_____/

**OPINION & ORDER
(1) DENYING DEFENDANT'S FIRST MOTION TO VACATE HIS SENTENCE (Dkt. 998), (2) DENYING DEFENDANT'S SECOND MOTION TO VACATE HIS SENTENCE (Dkt. 1014), (3) DENYING AS MOOT DEFENDANT'S MOTION TO COMPEL JUDGMENT (Dkt. 1120), AND (4) DENYING DEFENDANT'S MOTION FOR DISCOVERY (Dkt. 1121)**

This matter is before the Court on four motions filed by Defendant Alexandra Norwood: two motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Dkts. 998, 1014); a motion to compel judgment (Dkt. 1120); and a motion for discovery in relation to his § 2255 motions (Dkt. 1121). For the reasons that follow, the Court denies Norwood's motions to vacate and his motion for discovery, and it denies as moot his motion to compel judgment.[1]

**I. BACKGROUND**

Based on his involvement with a gang that sold illegal substances, Norwood was charged with (i) conspiracy to violate the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 (RICO); and (ii) murder in aid of racketeering, 18 U.S.C. § 1959(a). Am. 1st Superseding Indictment (Dkt. 191).

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to Norwood's motions, the briefing includes the Government's response to Norwood's § 2255 motions (Dkt. 1028), Norwood's reply (Dkt. 1119), the Government's response to Norwood's motion for discovery (Dkt. 1126), Norwood's reply (Dkt. 1152), and the Government's response to Norwood's motion to compel judgment (Dkt. 1125).

In a jury trial presided over by the undersigned, testimony reflected that Norwood was a member of a gang based in the Howard Estates, a public housing project on the south side of Flint, Michigan. See, e.g., 6/11/14 Trial Tr. at 31–40, 59–64 (Dkt. 853). The gang went by various names, including the "Howard Boys" and "Murda Ville." See 6/3/14 Trial Tr. at 145 (Dkt. 849). This gang controlled the drug trade in and around the Howard Estates. 6/11/14 Trial Tr. at 126–129.

Testimony demonstrated that Eddie Williams—an associate of the Howard Boys admired by the gang members—supplied the gang with drugs and firearms and advised on self-defense. See, e.g., 6/11/14 Trial Tr. at 137–139, 151–156. Williams had a feud with Jonathan Parker, who had previously shot and robbed Williams. See, e.g., 6/11/14 Trial Tr. at 173; 7/2/14 Trial Tr. at 77–78 (Dkt. 870). Williams offered Howard Boys members the opportunity to make money by killing Parker, and Norwood agreed to take the job. See, e.g., 7/2/14 Trial Tr. at 77–78; 6/19/14 Trial Tr. 152–156 (Dkt. 859). Norwood waited outside a store where Parker had been seen and started shooting when Parker emerged, firing about nine shots and killing Parker with a bullet to the head. See, e.g., 6/11/14 Trial Tr. at 179–180, 182–183; 7/2/14 Trial Tr. at 77–78.

The jury returned guilty verdicts against Norwood for all counts charged. Verdict (Dkt. 712). The Court sentenced Norwood to life imprisonment. Judgment (Dkt. 812). Norwood appealed, and the United States Court of Appeals for the Sixth Circuit affirmed (Dkt. 929).

## II. ANALYSIS

Norwood moves to vacate or set aside his sentence under § 2255, to compel judgment on his motions to vacate, and for discovery in relation to his motions to vacate.

### A. Motions to Vacate[2]

Norwood asserts four grounds for relief in his second motion to vacate: three arguments that his trial counsel, Harold Gurewitz, was ineffective, and one argument that he is "actually innocent" of murder in aid of racketeering. The Court proceeds by addressing each argument.

#### i. Ineffective Assistance of Counsel[3]

Norwood asserts several bases for ineffective assistance of counsel throughout his second motion to vacate. The Court considers each ground in turn.

---

[2] To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005) (punctuation modified). Non-constitutional errors "ordinarily are not cognizable on collateral review," United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000) (punctuation modified), but a movant can prevail on allegations of non-constitutional error by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process," Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (punctuation modified).

Norwood's first motion to vacate does not assert any substantive arguments and appears to serve as a cover sheet for his second motion to vacate.

[3] A defendant must establish two points to "demonstrate that a counsel's performance was so defective as to require reversal of a conviction: first, the defendant must show that counsel's performance was deficient[,] and second, the defendant must show that the deficient performance prejudiced the defense." Lint v. Preselnik, 542 F. App'x 472, 475 (6th Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)) (punctuation modified).

To establish deficient performance, a defendant must show that "counsel's representation fell below the objective standard of reasonableness." Id. (punctuation modified). On this first element, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (punctuation modified). To succeed on the second step, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Lint, 542 F. App'x at 476 (punctuation modified).

3

### a. Failure to Effectively Impeach Government Witnesses

Norwood submits that "trial counsel should have more effectively impeac[h]ed" government witnesses Eddie Williams, Xavier Turner, and Charles Orr. 2d Mot. to Vacate at 8–11. Norwood summarizes the testimony of these three witnesses; however, he does not make any specific argument as to why his trial counsel's questioning was deficient or how his counsel should have adopted a different strategy to impeach these witnesses. Id.

Norwood adds a bit more specificity in his reply, asserting that his "counsel was ineffective in a big way" by failing to "show[] the jury that the government witness [sic] received a benefit for their testimony" and to "properly attack the backgrounds of witness [sic] that was [sic] filled with prior criminal conduct and deception." Reply in Supp. 2d Mot. to Vacate at 16. However, Norwood does not identify for the Court which witnesses he references in this context, what benefits they received, what histories of crime and deception should have been brought to light, or what line of questioning his counsel presented at trial which Norwood considers deficient.

As the Government correctly notes, see Resp. to 2d Mot. to Vacate at 22, defense counsel's decisions as to how to conduct the "cross-examination[] or lack of cross-examination" of witnesses is "effectively insulated" from ineffective assistance of counsel challenges when based on "trial strategy." Hurley v. United States, 10 F. App'x 257, 260 (6th Cir. 2001). To overcome the presumption that Gurewitz's method of cross-examination met the standards expected of defense counsel, Norwood would have to—at the very least—identify specific decisions or statements in the record that Norwood considers deficient. He has not done so. Norwood does not even argue that Gurewitz failed to conduct any cross-examination; rather, he asserts in conclusory fashion that his counsel should have done so "more effectively." 2d Mot. to Vacate at 8. Conversely, the Government points to a "lengthy trial record" showing that defense counsel "aggressively challenged the government's case through lengthy and effective cross-examinations and trial presentation." Resp. to 2d Mot. to Vacate at 22.

Norwood must meet a high bar to establish that his counsel's method of cross-examination was so deficient as to warrant a reversal of his conviction. See Hurley, 10 F. App'x at 260. He cannot meet this standard by merely asserting that his counsel was deficient and hoping the Court will find support for his argument in the record. See Dibrell v. City of Knoxville, Tennessee, 984 F.3d 1156, 1163 (6th Cir. 2021) ("[J]udges are not like pigs, hunting for truffles that might be buried in the record . . . .") (punctuation modified). Norwood has not established ineffective assistance of counsel on this basis.

**b. Failure to Interview Witnesses**

Norwood challenges his "trial counsel's complete failure to investigate the factual basis for the government's trial claims that [Norwood] murdered Jonathan Parker." 2d Mot. to Vacate at 14. More specifically, he argues that his trial counsel "failed to procure the testimony of Tamika Fortt, Mary Fuentes and Jocille Johnson." Id.; see also id. at 6 ("Counsel did not follow the proper procedures to secure the presence of a key witness name[d] Tamika Fortt."). Norwood states that he referred his counsel to these witnesses, and yet counsel failed to obtain an investigator to reach out to them. Id. at 15. In his reply, Norwood concedes that an investigator did purport to investigate his recommended witnesses, but Norwood submits that the investigator "did not provide any concrete proof" of his investigative work. Reply in Supp. 2d Mot. to Vacate at 7. Norwood makes no assertions regarding how any of these potential witnesses were relevant to his case or what information they may have produced at trial.

Norwood similarly asserts that his counsel "failed to investigate the purported admission of Paki Bonner admitting that he was the one that murdered Johnathan Parker," without further elaboration. Id.

The Government submits that Norwood's "conclusory" claims fail to carry his burden to "'affirmatively prove prejudice.'" Resp. to 2d Mot. to Vacate at 12 (quoting Hodge v. Haeberlin, 579 F.3d 627, 640 (6th Cir. 2009) (finding that defendant failed to show prejudice on ineffective

5

assistance of counsel claim where he "g[ave] no details about the substance" of testimony he asserted his counsel should have used in defense and offered only "speculation that his testimony would have left a favorable impression with the jury") (punctuation modified)).  The Government is correct.  "To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness'[s] testimony would have produced a different result." Malcum v. Burt, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003).  With the possible exception of his one-sentence reference to Bonner's supposed admission, Norwood—like the petitioner in Malcum—has "failed to indicate the substance of the proposed testimony of any of these witnesses." Id. (denying petition for writ of habeas corpus).

Not only does Norwood fail to establish prejudice; he also cannot show that his counsel was deficient.  Per Gurewitz's sworn affidavit, Gurewitz did make efforts to investigate the witnesses identified by Norwood, and he determined that they "provided no evidence to show that Mr. Norwood was not at the crime scene and involved in the shooting."  Gurewitz Aff. at 4 (Dkt. 1028-1).  Indeed, these witnesses' testimony likely would have weakened Norwood's defense. Gurewitz determined that Fuentes had not seen the shooting, but she had heard gunshots and seen two men fleeing from the victim, one of whom she later identified as Norwood from a photo spread.  Id.  Gurewitz also found that Johnson, a witness to the shooting, had described the shooter as a black male (consistent with Norwood's description), but she passed away about a year before trial and so could not have testified anyway.  Id.; Resp. to 2d Mot. to Vacate at 17.

As to the supposed admission of Bonner, Fortt made a complaint to Flint police that her boyfriend, Bonner, had threatened to shoot her like he had shot Parker.  Gurewitz Aff. at 4. Gurewitz explains that the defense's investigator attempted to find Fortt, and the investigator identified possible out-of-state addresses for Fortt, but after the investigator failed to make contact, Gurewitz determined that "there was not an adequate basis on which to do more to call her as a

6

trial witness." Id. at 4–5. This decision is consistent with voluminous evidence contradicting Norwood's assertion that Parker had pulled the trigger, including Norwood's own statements to his defense counsel that he was present at the shooting and that he fired the gun as part of an agreement with Williams to resolve Williams's dispute with Parker. Id. at 2–3; Reply in Supp. 2d Mot. to Vacate at 10–11 (reflecting Norwood's concession that he told his counsel that he had agreed to shoot Parker to receive money from Williams). The Government further submits that, though Bonner told his girlfriend that he had shot Parker, the Government has information that Bonner was lying. Resp. to 2d Mot. to Vacate at 18. Bonner—a Howard Boys member—had knowledge that Norwood was associated with the gang and had committed the murder, and so, in the Government's view, Bonner would have corroborated the Government's position if he had testified. Id.

"The decision whether to call a witness is generally a matter of trial strategy . . . ." Samatar v. Clarridge, 225 F. App'x 366, 372 (6th Cir. 2007) (affirming denial of habeas petition). Gurewitz's sworn statement confirms that his decision not to call the witnesses identified by Norwood was strategic and within the realm of decision-making properly delegated to defense counsel, especially because of the likelihood that these witnesses would have hurt Norwood's case rather than helped it. Gurewitz was not ineffective on this basis.

### c. Failure to Investigate Crime Scene

Norwood argues that his counsel failed "to send an investigator to the crime scene . . . ." 2d Mot. to Vacate at 6.

However, Norwood's counsel did hire a private investigator: Andrew Dillon, whose contract was approved by this Court. Resp. to 2d Mot. to Vacate at 13. Gurewitz avers both that Dillon traveled to Flint to conduct an investigation at counsel's direction, and that Gurewitz himself traveled to Flint to investigate and photograph the crime scene. Gurewitz Aff. at 5–7. Norwood admits as much in his reply. See Reply in Supp. 2d Mot. to Vacate at 5 ("Counsel

7

obtain[ed] investigator Andrew Dillon to conduct an investigation of the crime scene . . . ."); id. at 7 (acknowledging that Gurewitz traveled to and took pictures of crime scene). This ground for asserting that Norwood's counsel was deficient has no merit.

### d. Failure to Allow Norwood to Testify

Norwood argues that his counsel "failed to allow [Norwood] to testify at trial on his own behalf." 2d Mot. to Vacate at 6. He does not expand on this argument.

A defense attorney's role is to advise a defendant whether to testify or not, and counsel is "presumed" to have done so if a defendant does not testify, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify." United States v. Webber, 208 F.3d 545, 551 (6th Cir. 2000). As the Government correctly observes, see Resp. to 2d Mot. to Vacate at 23, the trial record indicates that Norwood knowingly and voluntarily waived his right to testify; he told the Court: "I do not choose to testify on my own behalf." 7/16/14 Trial Tr. at 74 (Dkt. 878). There is no merit to Norwood's bare-bones assertion that his decision not to testify was the fault of his counsel's deficiencies. Norwood has failed to establish ineffective assistance of counsel on the basis of his choice not to testify. See Webber, 208 F.3d at 551.

### e. General Ineffectiveness

Norwood also accuses his trial counsel of "cumulative ineffectiveness." 2d Mot. to Vacate at 22–24. He asserts: "The crux of [trial counsel's] ineffectiveness was both his failure to provide constitutionally direct appeal argument's [sic], and his failure to investigate and prepare for trial, and impeach key government witnesses. But most significantly, were his collective failings in preventing the jury from giving a full and fair assessment of the evidence." Id. at 22. Norwood also references "counsel's numerous and repeated mistakes in failing to effectively assail" the Government's witnesses and claims, without further specification. Id. Throughout his motion,

8

Norwood similarly hurls general accusations at his trial counsel without elaborating on how specifically his counsel should have acted differently.[4]

As the Government submits, see Resp. to 2d Mot. to Vacate at 14, these accusations are too vague to carry an ineffective assistance of counsel claim. To "affirmatively prove prejudice," Norwood must offer more than "speculation." Hodge, 579 F.3d at 640 (punctuation modified). Norwood's abstract attempts to cast around for constitutional error do not approach the specificity needed to upset the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. And to the extent that cumulative

---

[4] Norwood asserts:

- "Counsel was constitutionally ineffective because he failed to subject the prosecution's case to a meaningful adversarial testing process by failing to prepare for trial, had no focused defense strategy, failed to call any witnesses, and failed to oppose the [G]overnment's motion to quash his one properly executed subpoena." 2d Mot. to Vacate at 16.

- "[H]ad trial counsel done adequate pre-trial investigations, he would have been able to develop substantial evidence to raise reasonable doubts about the claims the government witnesses presented at trial." Id. at 7.

- Counsel failed "to investigate the factual basis for the government's trial claims that [Norwood] played and was a key participant." Id. at 8.

- Counsel "fail[ed] to interview the government witness" and "told [Norwood] numerous times that neither [Norwood] nor [counsel] was authorized to interview prosecution witnesses." Id. at 6.

- Counsel "failed to investigate all the material and information given to the defendant by the prosecutor, Discovery [sic] materials and Exculpatory [sic] evidence." Id.

- Counsel failed "to listen to [Norwood's] version of the case" and failed to use impeachment evidence as directed by defendant." Id.

- Counsel "failed to ask questions in [their] proper form at trial." Id.

- Counsel "should have examine[d] all the photographs made during the course of the investigation of the case . . . ." Reply in Supp. 2d Mot. to Vacate at 10.

9

errors can suffice to establish an ineffective assistance claim, there must be actual "errors to cumulate." Getsy v. Mitchell, 495 F.3d 295, 317 (6th Cir. 2007).

The record here does not abound with defense counsel's errors; rather, it shows that Gurewitz acted competently where, among other acts, he (i) met with Norwood more than 30 times before trial, (ii) obtained the Court's approval for Norwood to obtain a laptop so that Norwood could review the 13,000 pages of discovery, and (iii) discussed with Norwood the charges and Norwood's version of events in detail. Resp. to 2d Mot. to Vacate at 14–15 (citing Gurewitz Aff. at 2). Norwood has cast a wide net, but he has not caught a claim indicating that his counsel was deficient or that any supposed deficiency prejudiced his case. See Lint, 542 F. App'x at 475.

### ii. Actual Innocence of Murder in Aid of Racketeering

Norwood submits that he is actually innocent of murder in aid of racketeering. 2d Mot. to Vacate at 18–21 (citing United States v. Ledbetter, 929 F.3d 338 (6th Cir. 2019)). "[A]ctual innocence means factual innocence, not mere legal insufficiency," and "the actual innocence exception should remain rare and only be applied in the extraordinary case." Souter v. Jones, 395 F.3d 577, 590 (6th Cir. 2005) (punctuation modified). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. (punctuation modified). A petitioner may not present the "same issue" in his § 2255 motion as one he raised on direct appeal. See DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996).

Norwood appears to argue that there was insufficient evidence to establish that the murder he committed had a gang-related purpose.[5] This understanding is supported by Norwood's citation

---

[5] Norwood argues that "there was a complete absence of evidence that the victim Parker posed a threat to anyone but Williams, who testified he was not involved [with] and did not associate with the Howard Boys . . . ." 2d Mot. to Vacate at 19. Norwood continues: "There was also no testimony about meetings held by individuals associated with the group to plan the murder.

10

to Ledbetter, 929 F.3d 338—a case raising an insufficiency-of-evidence argument on direct appeal. Norwood does not deny that he committed the underlying murder; in fact, he appears to concede that he did so. See Reply in Supp. 2d Mot. to Vacate at 10 ("Movant did explain [to his trial counsel] that he was an independent contractor who accepted a contract from Eddie Williams to take care of the dispute for money."); see also id. at 11 (explaining that Norwood had represented to his counsel that he was present "on the day of the Parker shooting to hustle drugs when the defendant was given a phone . . . so that the defendant, could talk to Eddie Williams; that Williams asked the Movant to shoot Parker—to take care of the situation and: 'to make some money'").

Norwood already argued on appeal that there was insufficient evidence to establish that the murder he committed had a gang-related purpose—an argument the Sixth Circuit rejected. See United States v. Gills, 702 F. App'x 367, 376–377 (6th Cir. 2017). Norwood is barred from raising this same issue in a motion to vacate. See DuPont, 76 F.3d at 110. Further, even if framed as an actual innocence claim, Norwood's repackaging of old arguments fails to constitute the "new reliable evidence" needed to prevail on that theory. See Souter, 395 F.3d at 590 (punctuation modified). Norwood has failed to establish that he was actually innocent of his convictions.

Norwood has not established that his counsel was ineffective or that he was actually innocent of his convictions. The Court denies Norwood's motions to vacate his sentence.

---

According to the prosecution['s] witnesses, if believed, any advance discussions about the shooting were between Norwood and Williams." Id. In Norwood's view, because the Howard Boys had no structure or rank, the Government could not succeed on its "vague enterprise theory." Id. Norwood concludes that there was an "absence of evidence supporting a conclusion that it was Movant's animating or general purpose to commit the Parker homicide to enhance or maintain his position within the Howard Boys enterprise," and so "the jury verdict for Count [2] must be revis[i]ted." Id.

11

### B. Motions for Discovery and to Compel Judgment

Norwood also moves for discovery under Rule 6 of the rules governing motions brought under 28 U.S.C. § 2255. See Mot. for Discovery. "Under Rule 6(a) of the Rules Governing Section 2255 Proceedings, a district court may authorize a movant to conduct discovery upon a showing of good cause." Cornell v. United States, 472 F. App'x 352, 354 (6th Cir. 2012). "Good cause is established where specific allegations show reason to believe that the movant may, if the facts are fully developed, be able to demonstrate entitlement to relief." Id. (punctuation modified).

Norwood "seeks leave to conduct discovery, production of documents, and disclosure from the United States of all typed, written, or electronic versions of any and all emails, letters, memos and/or any form of communication from the United States Attorney's Office to any of the Defense Counsel in this case concerning": "Jailhouse phone recordings"; "an ALIBI DEFENSE"; "Exculpatory evidence"; "Other Plea Agreements"; "Alibi Witness testimony/affidavits"; and "Etc. as necessary." Mot. for Discovery at 4. Norwood believes that this discovery "will prove Petitioner's claim that he was denied Effective Assistance of Counsel," which is Norwood's basis for "Good Cause." Id. at 4–5; see also Reply in Supp. Mot. for Discovery. Norwood further requests that "ALL Attorneys answer the attached interrogatories concerning the existence" of the matters into which he seeks discovery. Mot. for Discovery at 4 (referencing interrogatories available at PageID.14607–14613).

The Government submits that Norwood has failed to make allegations with sufficient specificity to demonstrate that he may be entitled to relief. See Resp. to Mot. for Discovery at 2–4. The Court agrees. Norwood offers only "general, hypothetical, and abstract assertions" for the supposed need for discovery. United States v. Wes, No. 06-20185, 2017 WL 8728388, at *1–*2 (E.D. Mich. Jan. 13, 2017) (denying motion for discovery under Rule 6 where defendant sought to embark on "fishing expedition based on conclusory allegations"). Norwood does not even attempt to explain which specific grounds and particularized allegations he seeks to buttress in his

motions to vacate. As explained above, those motions to vacate suffer from a pervasive lack of specificity. Norwood has failed to show good cause for his motion for discovery for the same reason.

As the Government also observes, see Resp. to Mot. for Discovery at 3, Norwood contradicts his supposed need for discovery in a separate filing. On the same day that he filed his motion for discovery, Norwood filed a motion to compel judgment on his motions to vacate, insisting that the matter is "ripe for judgment." Mot. for J. at 2.

Because Norwood has made an insufficient showing of good cause, the Court denies Norwood's motion for discovery. See Wes, 2017 WL 8728388, at *1. Because the Court denies Norwood's motions to vacate for the reasons explained above, the Court denies as moot Norwood's motion to compel judgment.

### III. CONCLUSION

For the reasons explained above, the Court denies Norwood's motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Dkts. 998, 1014); denies as moot his motion to compel judgment (Dkt. 1120); and denies his motion for discovery (Dkt. 1121).

SO ORDERED.

Dated: March 20, 2023　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge